Palmer and others, adm'rs &c., vs. Elizabeth Yager and Hiram Hiestand, adm'r, &c.

PALMER and others, Adm'rs &c., vs. ELIZABETH YAGER and HIRAM HIESTAND, Adm'x and Adm'r of the estate of HENRY W. YAGER, deceased, and PATRICK G. CHEEVES, impleaded with others.

*Award without satisfaction—Pleading—Costs on reversal of judgment where both parties appeal—Practice as to hearing parties on appeal—Issue of paramount title in foreclosure.*

1. A. held B.'s promise in writing, secured by a mortgage on land, for the payment of a debt in wool and sheep. The extent of B.'s liability being in dispute, A. agreed, by way of compromise, to accept in discharge of such liability a certain sum of money, payable thereafter. *Held*, that if A. had surrendered said written contract, and the mortgage, or had executed a release, or there had been other sufficient evidence of an agreement that the original debt should be released, he could not have maintained an action on the written instrument and mortgage.

2. But no such surrender or release having been executed, nor any act done indicating an intention to cancel the written promise and mortgage, and the money agreed to be received not having been paid, A. could maintain an action on the original contract.

3. An agreement by A. with B., that after ascertaining, upon a certain specified basis, the balance due A. upon his bond and mortgage, he would "accept the balance in full satisfaction of said bond and mortgage," is not an agreement to accept the *promise* of the payment of such balance as extinguishing the original debt. So also of an agreement to allow B. at a specified rate for the wool already received, and "to take on the balance the clip of that and the preceding year, allowing therefor the market price at the time of delivery."

4. A complaint declaring on "a certain bond or instrument in writing," is sufficient, although the instrument is not a *bond*, not being sealed.

5. Where both plaintiff and defendant appeal, and the judgment is reversed for errors injurious to the plaintiff only, costs will be taxed in favor of the plaintiff on his appeal, and no judgment for costs will be given for the defendant in connection with the judgment of reversal on his appeal. DOWNER, J., was of opinion that but one judgment of reversal should be entered, and that on the appeal of the plaintiff.

6. Where in foreclosure the court granted the only relief asked in the separate answer of a subsequent purchaser of part of the premises, directing that part to be last sold, and such defendant appealed: *Held*, that he could not be heard here upon the question whether the mortgage had been satisfied, not having raised that issue in his answer.

7. Parties who answered separately, claiming distinct rights not involved in the issues presented by the other defendants, and did not appeal, have no right to be heard in this court.

8. It is a general rule, that in foreclosure cases, if objection be taken, questions of paramount legal title will not be examined. *Pelton v. Farmin*, 18 Wis., 222, followed.

Palmer and others, adm'rs &c., vs. Elizabeth Yager and Hiram Hiestand, adm'r &c.

9.  Where, however, the mortgagee, *by his complaint*, in opposition to the legal title in a third party, alleges a superior equitable title in the mortgagor, and that it is covered by the mortgage, and demands that such third party (who is made a defendant) convey, or that the title be adjudged to have been in the mortgagor, and such third party answers in denial, *it seems* that the question should be adjudicated in the action.

APPEALS from the Circuit Court for *Racine* County.

Foreclosure of a mortgage.    The action was by *Calvin G. Williams* against *Elizabeth Yager, Patrick G. Cheeves* and wife, *John A. Waltermire* and wife, *Zechariah H. Link*, and *Elizabeth Yager* and *Hiram Hiestand* as administrator and administratrix of the estate of Henry W. Yager, deceased.    The mortgage was executed by Henry W. and *Elizabeth Yager*, in August, 1848, as collateral to an instrument made by said Henry W. Yager, which, when produced in evidence, was found not to be under seal, and which is described in the complaint as " a certain bond or instrument in writing;" the condition of which was, "that whereas the said *Calvin G. Williams* has delivered to said Henry W. Yager two hundred and twenty-two good sheep and one good buck ; and the said Henry W. Yager has agreed, in consideration thereof, to take said sheep and keep the same, and to deliver the said *Williams* annually, on the 15th day of June in each and every year, for five years from the date hereof, three hundred and thirty-three pounds of *good clean*-washed wool, and the entire fleece of one buck, well sacked, of an average quality produced by said sheep above mentioned; said wool to be delivered at such place in the city of Milwaukee and state of Wisconsin as the said *Williams* shall designate and appoint ; and has also agreed to deliver to said *Williams,* at the expiration of said five years, two hundred and twenty-two good merchantable sheep, and one good buck, of an average quality of the sheep above mentioned : Now if the said Henry W. Yager shall " &c., &c.    The condition of the mortgage was as follows : "that if the said Henry W. Yager, his heirs, executors or administrators, shall well and truly keep and perform the condition of a certain bond—which said bond bears even

date herewith, and is executed by the said party of the first part to the said party of the second part, and the condition whereof is as follows, to wit: [here follows the condition as above stated]—then these presents and the said bond shall cease and be null and void."

The complaint alleges that prior to the time when the first payment became due on said bond or instrument in writing, the plaintiff designated the place of delivery in Milwaukee, and notified said Henry W. Yager thereof; that wool was delivered upon said contract as follows: June 29, 1849, 171 lbs; June 10th, 1850, 124 lbs.; July 16, 1851, 186 lbs.; June 28, 1853, 292 lbs.; and that, with the exception of such payments, default had been made in the performance of the conditions of said instrument. It then contains suitable averments to show the plaintiff's damage by reason of such default; alleges the decease of said Henry W. Yager, and the appointment of administrators upon his estate, and that the other defendants above named have or claim some interest in or lien upon the the mortgaged premises, which is subsequent and subject to said mortgage; and demands judgment of foreclosure in the usual form.

The answer of *Elizabeth Yager* and *Hiram Hiestand*, as the representatives of said Henry W. Yager, set up a partial failure of consideration, on the ground that the sheep mentioned in the contract declared on were infected with disease at the time of their delivery to said Henry, contrary to the representations of the plaintiff, in consequence of which disease large numbers of them died, &c. It further defends upon the ground that "in June, 1853, the plaintiff and said Henry W. Yager entered into an arrangement and settlement of the whole matter of said sheep and of the said contract, bond and mortgage in relation thereto, and of the diseased and infected condition of said sheep, upon the following terms: The said Yager agreed to pay said plaintiff for all said sheep (two hundred and twenty-three in all) at the rate of one dollar thirty-seven and one-half cents

per head, and interest on that amount at the rate of twelve per cent. per annum from the date of said bond and mortgage, deducting therefrom, at the time the same was delivered, the value of the wool received by the plaintiff in the years 1849, 1850 and 1851, at twenty-seven cents per pound, and of that received in 1853 at forty cents per pound; and that there was due the plaintiff on said bond and mortgage, at the time of such settlement, and pursuant thereto, less than two hundred dollars; and the plaintiff then agreed with the said *Yager* to accept such balance, when ascertained upon the foregoing basis, in full satisfaction of said bond and mortgage; and said defendants say that there is nothing equitably due to the plaintiff on the said bond and mortgage, except what is due thereon by virtue of said settlement.

The defendant *Patrick · G. Cheeves* answered that he had purchased and taken a conveyance from Henry W. and *Elizabeth Yager* of a certain part of the mortgaged premises; and asked judgment that the other portions of the same, be first sold, &c. The defendants *John A.* and *Sarah M. Waltermire* answered separately, setting up title to a part of the premises paramount to that of the mortgagor, and demanded judgment that said mortgage was not a lien or incumbrance on the land so claimed by them.

On the trial, the plaintiff put in evidence the instrument declared on as "a bond or instrument in writing," and also the mortgage; the defendants *Elizabeth Yager*, *Hiestand* and *Cheeves* objecting on the ground that the former was not under seal. There was considerable evidence introduced by the plaintiff tending to show that the mortgagor, at the time of executing the mortgage, had a superior equitable title to the land claimed by the defendants *Waltermire*; and this evidence was admitted against the objection of said defendants *Waltermire*, who insisted that the validity of their title could not properly be litigated in this action. After the plaintiff's evidence was in, defendants moved to dismiss the action on the ground "that the allegation

of the complaint respecting the bond sued upon was unproved in its entire scope and meaning." The motion was denied.

There was conflicting testimony as to the condition of the sheep delivered by the plaintiff to Henry W. Yager, at the time of such delivery. As to the alleged new agreement in 1853, one Munsell, as a witness for the defense, testified as follows : That just before sheep shearing time in 1853 or 1854, near Yager's residence, he heard a conversation between him and the plaintiff. " Yager said to the plaintiff that the sheep had been a damage to him ; that it was idle for him to talk of returning the original number, for he could not get the flocks above one hundred, do the best he could; that the sheep were diseased when he received them, &c.; that he was tired of the whole business, and desired plaintiff to make him a proposition for settlement. The plaintiff, after some consideration, proposed that Yager should keep the sheep, and allow him eleven shillings per head for the original number, and he would allow Yager for the wool already received on the contract, at the market price at the time it was received, and on the balance he would take the clip of that and the succeeding year, allowing therefor the market price at the time of delivery. The plaintiff remarked at the same time that the clip of that and the succeeding year would finish paying up for the sheep. Yager remarked that he considered the price too high under the circumstances, but for the sake of having the business settled, he would accept the plaintiff's proposition for settlement. They figured up and agreed upon the amount due the plaintiff under this agreement for the sheep, which figuring was made by Yager in his account book and assented to by plaintiff. * * At the time of this agreement, Yager had, I think, ninety-seven or ninety-eight sheep, and by the agreement he became the owner of these at the price of eleven shillings per head, as I have already stated." The memorandum made as above stated in Yager's account book, was afterwards put in evidence, and was as follows: "1853. June. *Calvin G.*

*Williams* and H. W. Yager have entered into an arrangement and settlement of sheep taken August, 1848, as follows : Cr. to *Williams* 223 sheep at 11 shillings per head, making in all the amount——————$306, and interest at the rate of 12 per cent from date of bond given for the sheep in August, 1848. *Williams*, Dr. to 171 lbs. wool in 1849, at 27c, $46.17 ; 1850, to 124 lbs. wool at 27c, $33.48; 1851, to 186 lbs. wool at 27c, $50.22 ; 1852, Yager Dr. 256 lbs. at $76.80; 1853, *Williams* Dr. to 292 lbs. wool at 40c, $116.80." Under the decision of this court, the remainder of the evidence (which was voluminous) becomes unimportant here.

The court found, *inter alia*, that the plaintiff was still the owner and holder of the bond and mortgage described in the complaint; that no payments had been made thereon except those stated in the complaint; that in June, 1853, the plaintiff and Henry W. Yager concluded the agreement of settlement set forth in the answer; and as matter of law the court held that said agreement was valid and binding upon the plaintiff, who could recover in this action only the amount found to be due and unpaid by the terms of that agreement, to wit, the sum of $422.37 ; and judgment of foreclosure for that amount was rendered accordingly. The court also found that the defendant *Patrick G. Cheeves* had purchased and taken a conveyance of a portion of the premises, as stated in his separate answer, and directed in the judgment that said premises be sold in parcels, and the portion conveyed to *Cheeves* should be sold only to pay any deficiency that might remain after the sale of the balance.

The plaintiff, the defendants *Elizabeth Yager* and *Hiestand*, as personal representatives of Henry W. Yager, and the defendant *Cheeves*, all filed separate exceptions, and severally appealed.

*Williams* having deceased, his administrators were substituted as plaintiffs.

*Strong & Fuller*, for the plaintiffs, to the point that the original

contract was not discharged, cited *Seymour v. Minturn*, 17 Johns., 169; *Jackson v. Stackhouse*, 1 Cow., 125; *Strang v. Holmes*, 7 Cow., 224; *Suydam v. Jones*, 10 Wend., 180; *Anderson v. H. Turnpike*, 16 Johns., 86; *Boyd v. Hitchcock*, 20 id., 76; *Russell v. Lytle*, 6 Wend., 390; *Delacroix v. Bulkley*, 13 id., 71; 2 Parsons on Con. (4th ed.), 129–32, 196–200; *Babcock v. Hawkins*, 23 Vt., 561; *Fitch v. Sutton*, 5 East, 232; *Harrison v. Close*, 2 Johns., 449; *Dederick v. Leman*, 9 id., 332.

*Lyon, Adams & Hand*, for the administrators and *Cheeves*, argued that the action was founded upon the execution of a *bond*, and the instrument put in evidence, not being sealed, was not a bond; that said instrument was but a simple contract, on which the statute of limitations had run before the commencement of the action, and there was no independent covenant in the mortgage to perform the obligation; that the allegations of the complaint as to the cause of action being unproved in their entire scope and meaning, the action should have been dismissed. R. S., ch. 125, sec. 35; *Cottrell v. Conklin*, 4 Duer, 45; *Hempstead v. N. Y. Cent. R. R. Co.*, 28 Barb., 485; *Parker v. R. R. Co.*, 16 id., 315; *Saltus v. Genin*, 3 Bos., 250; *Roth v. Schloss*, 6 Barb., 308; *Egert v. Wicker*, 10 How. Pr. R., 193; *Catlin v. Hausen*, 1 Duer, 319; *Fisher v. Fredenhall*, 21 Barb., 82; *Texier v. Gouin*, 5 Duer, 389. To the point that the agreement between the plaintiff and Henry W. Yager, in 1853, was valid and binding as an accord and satisfaction, they cited *Halcomb v. Stimpson*, 8 Vt., 141; *Babcock v. Hawkins*, 23 id., 561; *Ex parte Lucy*, 21 Eng. L. & E., 199; *Long v. Shackleford*, 25 Miss., 559; *McClellan v. Kennedy*, 8 Md., 230; *Billings v. Vanderbeck*, 23 Barb., 546; *Goodrich v. Stanley*, 24 Conn., 613; *Woodward v. Miles*, 4 Foster, 289; *Sard v. Rhodes*, 1 M. & W., 153; *Good v. Cheeseman*, 2 B. & Ad., 328; *Evans v. Powis*, 1 Exch., 601; Com. Dig., "Accord," B. 4; 2 Parsons on Con., 195; *Brooks v. White*, 2 Met., 283; *Palmerton v. Huxford*, 4 Denio, 166; *Kellogg v. Richards*, 14 Wend., 116; *Pinnell's Case*, 5 Co., 117.

*N. H. Joy* (with whom was *E. Jamieson,* of counsel), for defendants *Waltermire,* contended, among other things, that the alleged paramount title of said defendants could not properly be adjudicated under the pleadings, citing 13 Wis., 11; 5 Seld., 502; 4 Halst. Ch., 635–39; 2 Barb., 21–23.

DIXON, C. J.  There are three appeals in this cause, and three entries upon the calendar: one by the plaintiffs, one by the defendants *Elizabeth Yager* and *Hiram Hiestand,* and the other by the defendant *Cheeves.*

The question upon the two first appeals is, whether the agreement of June, 1853, between *Williams* and *Yager,* since deceased, was an accord and satisfaction of the claim now set up upon the bond and mortgage.  The circuit court held that it was, and gave judgment for the plaintiffs for the balance found due upon the agreement, though a much larger sum was due according to the terms of the bond and mortgage.

It is a general rule, that an accord which has not been followed by satisfaction is no bar to an action.  In other words, a subsequent promise, without execution, does not extinguish a pre-existing debt.  But the rule has its exceptions; and one is, where it is expressly agreed that the promise shall have that effect.  When a debt is due by one contract, the parties may abolish it and substitute another in its place.  In such case, if the substituted contract is founded upon any new or sufficient consideration, or if made upon the compromise of a doubtful or disputed claim, the original debt is extinguished, and no action can thereafter be maintained upon it.  And this is so, whether the substituted contract be kept and performed or not. If not performed, the remedy is upon that contract for the breach.  A new or sufficient consideration arises when the substituted contract is advantageous to the creditor, that is, when he derives a distinct benefit from it—something of value to which he would not have been entitled under the original contract. If he derives any such distinct benefit, and it is in addition ex-

pressly agreed that the substituted contract shall be received in satisfaction of the original, then the original contract is at an end. And any distinct benefit accruing to the creditor, however slight, will support such substituted contract. If the original contract be for the payment of a sum of money undisputed, and the substituted one be for the payment of a less sum, and not at a different time nor in a manner more advantageous to the creditor, it cannot be sustained as an accord and satisfaction though expressly so agreed. The creditor derives no distinct benefit from it. He neither receives nor is to receive anything to which he is not already entitled by virtue of the original contract. But if by the original contract the money is not yet due, and that which is substituted provides for an earlier payment, it is a good accord and satisfaction. The creditor has his advantage in the earlier payment of the money. The same is also true, if the substituted contract, instead of the payment of a less sum in money, is for the delivery of property or the performance of labor in satisfaction, though of less actual value. So too of an original contract for the delivery of property or the performance of labor, for which satisfaction in money or other property or labor is agreed to be substituted. In such cases, in the absence of fraud, courts will not inquire into the value of the property to be received or delivered, or the labor to be performed, in satisfaction of the pre-existing obligation, but leave the creditor to judge for himself, as in other transactions. It is presumed that he found it for his advantage, else he would not have entered into the substituted contract. Mere inadequacy of consideration constitutes no ground of impeachment, more than in other cases of contract. It is enough if it appears that the creditor receives any distinct benefit from the substituted contract, which otherwise he would not have had.

In the case at bar, therefore, there was no want of consideration to constitute a valid accord and satisfaction. The original debt was payable in wool and sheep. The substituted promise

was to pay in money.    The extent of Yager's liability was in dispute, and the promise was likewise made by way of compromise.    Upon either ground it was a binding and valid agreement, and would have extinguished the original debt if the parties had so agreed.    If, for example, *Will'ams* had surrendered the bond and mortgage, or had executed a release, thus making the intention clear, there can be no doubt he could not afterwards have maintained an action to foreclose, but must have pursued his remedy upon the promise to pay in money. And this is the difficult point in the defense.    *Williams* did not surrender, nor release, nor do any other act from which an intention to cancel the bond and mortgage can be inferred, until the promise was performed and the money actually paid.    It never was performed by Yager.    If it had been, and the money accepted by *Williams*, it would have become a promise executed, and, as such, a good accord and satisfaction.    But before execution, and without any agreement that the promise of itself should operate as a discharge, the original debt remained in full force and unsatisfied.    Such promises are to be interpreted in one of two ways: either as absolutely substituted for the original debt, or as collateral to it; and if collateral, the debt continues until the promise has been performed.    When, therefore, in answer to an action for the debt, the defendant pleads the unexecuted promise, it becomes a question of intention, to be settled by the court or jury upon the facts of the particular case.    Did the parties intend or the creditor agree to accept the thing to be performed, or merely the promise to perform, in satisfaction of the pre-existing obligation?    If the former, the promise is collateral, and the debtor's liability unchanged; but if the latter, the original debt is extinguished. And in deciding this question, reference must be had to facts.    An intention to satisfy is not to be implied from the mere making of the promise.    It must be established by some additional proof, the burden of which rests upon the debtor.

As already observed, the surrender of the original securi-

ties, or the delivery of a release or receipt, becomes very strong, perhaps conclusive evidence. But without these or some other equivalent facts, the intention cannot be inferred, and the plea must fail. Applying the same doctrine to the facts of this case, the plaintiff's right to maintain the action and to recover the amount originally due, less the payments which have been made and the damages, if any, which were sustained by reason of the diseased condition of the sheep, seems very clear. The language of the answer is, that after deducting the value of the wool which had previouly been delivered to *Williams*, he was "*to accept the balance*, when ascertained upon the foregoing basis, in full satisfaction of said bond and mortgage." The principal witness testifies that *Williams* was to "allow Yager for the wool already received on the contract at the market price at the time it was received by him, and that on the balance he would take the clip of that and the succeeding year, allowing therefor the market price at the time of delivery." Upon either statement it is perfectly manifest that there was no agreement to accept the promise in satisfaction of the bond and mortgage.

We have spoken of the instruments sued on as a bond and mortgage. The instrument mentioned as a bond, however, is not such. It has no seal, and can take effect only as a parol or simple contract. It is objected that it ought not to have been received in evidence, and that when received it had no tendency to prove the cause of action set out in the complaint. The ground of this objection is, that it is described in the complaint as a bond. But this is a mistake. The words of the complaint are a "certain bond or instrument in writing." If not correctly described as a "bond," it is as an "instrument in writing," and as such was properly admitted in evidence.

The judgment below turned wholly on the question of accord and satisfaction. The defense that the sheep were diseased, and the defendants entitled to a deduction in damages on that account, was not considered. Some evidence was given upon

VOL. XX—8

it, but no decision was made.    It will not therefore be considered by us, but the judgment will be reversed, and the cause remanded for a new trial upon that issue.  The same judgment will be entered in both appeals, that of the plaintiffs and that of the defendants *Elizabeth Yager* and *Hiram Hiestand*.    But as the plaintiffs are the gainers, and those defendants the real losers in each, the costs of this court will be taxed only in favor of the plaintiffs upon their appeal.    No judgment for costs will be given for the defendants.

The mortgage is upon 160 acres of land.    The defendant *Cheeves* is the owner of one eighty by subsequent purchase from Yager and wife.    He answered setting up this fact, and that the other eighty still belonged to the estate, and demanded that the other eighty should be first sold.    The court granted the relief which he asked, and directed the sale of the other eighty first.    Why he should feel aggrieved by the decision, or prosecute this appeal, we are unable to see.    He certainly has no ground of complaint.    It seems to have been thought that he could come here upon the main question, of whether the mortgage had been satisfied.    But this is not so.    No issue of the kind is made by his answer.    It arises only upon the answer of the principal defendants, *Elizabeth Yager* and *Hiram Heistand*.    As he has no cause of complaint, it would follow ordinarily that the judgment as to him would be affirmed.    But as it has already been wholly reversed on the appeal of the plaintiffs, this cannot be.    It must therefore be reversed on his appeal also, but without costs to be taxed in his favor.

An appearance has also been entered and an argument submitted in behalf of the defendants *Waltermire and wife*.    This is clearly irregular.    They answer separately, claiming distinct rights not involved in the issues presented by the other defendants.    The court decided against them, and they have not appealed.    Consequently their rights are not before us for adjudication.    Their answer, in brief, is that they are the owners, by paramount title and not subject to the mortgage, of the

eighty acres claimed to belong to the estate of Yager. The evidence discloses that whilst the defendants' *Waltermire and wife* have the legal title, and had it at and before the execution of the mortgage, Yager had or claimed to have the entire equitable interest. It is this equitable interest which the plaintiffs seek to subject to the mortgage. It is a general rule, if objection be taken, that questions of paramount legal title will not be examined in cases of this nature. *Pelton v. Farmin*, 18 Wis., 222. But where, in opposition to such legal title, the mortgagee alleges a superior equitable title in the mortgagor, and that it is covered by the mortgage, it would seem that such equitable title ought to be examined. But in order to do so a proper case should be made by the pleadings. The facts should be stated in the complaint, and a demand for the requisite relief made, either that the holder of the legal title convey, or that the title be adjudged to have been in the mortgagor. In this case there is nothing of the kind. The complaint is in the usual form, and the defendants *Waltermire and wife* are charged as having or claiming some lien upon or interest in the mortgaged premises subsequent and subject to the mortgage. If they had appealed, therefore, it is not improbable that they would have prevailed upon this ground. But as they have not, we express no positive opinion upon the legal effect of the judgment against them, leaving it for counsel to avoid doubts, if they choose, by a future amendment of the complaint.

DOWNER, J. As a matter of practice I think but one judgment of reversal should be entered, and that on the appeal of the plaintiff below.

*By the Court.*—The judgment is reversed upon each of the appeals, and the cause remanded for further proceedings in accordance with this opinion.