BALL, Appellant, vs. McGEOCH and others, Respondents.

*December 19, 1891 — February 2, 1892.*

*Debtor and creditor: Composition agreement: Subsequent release: Fraud: Evidence.*

A composition agreement, dated July 2, between the firm of M., E. & Co. and its creditors, provided that the latter should accept fifty cents on the dollar in cash within ten days "in full settlement and liquidation" of their claims, "the amount of each to be settled and adjusted by" the receiver of the firm. A release, dated July 20

Ball vs. McGeoch and others.

and signed by one of the creditors, recites that M., E., and others, comprising the firm of M., E. & Co., are in failing circumstances and unable to pay their debts in full, and states that "in consideration thereof and of the receipt of the sum of money hereinafter named, the undersigned creditor hereby acknowledges receipt from them" of a certain sum (being fifty per cent. of his claim), "as a full compromise and adjustment of the validity, and in final settlement, satisfaction, and discharge of all claims and demands of the undersigned against said firm and individuals." In an action by said creditor to recover the balance of his claim, it is *held* that he may show that his signature to the composition agreement was obtained by false representations and fraud, and that the same were carried forward and operative in procuring from him the subsequent release.

APPEAL from the Circuit Court for *Milwaukee* County.

The amended complaint alleges, in effect, that at the times hereinafter mentioned the defendants were copartners, doing business on the board of trade in Chicago, under the firm name and style of McGeoch, Everingham & Co.; that the plaintiff during the same times was engaged in business as a factor and commission merchant at the same place, on said board of trade; that on and between June 9 and 15, 1883, at the special instance and request of said firm, this plaintiff did purchase in his own name, but for said firm and at their order, 8,000 tierces of lard at the then market price, and thereby incurred a liability to the seller thereof to the amount of $296,620, said lard to be delivered at any time in the month of July, 1883; that between June 9 and 16, 1883, said firm paid to the plaintiff thereon $10,000; that the defendants, having become unable to pay for said lard, ordered the plaintiff to resell, and he thereupon did accordingly resell the same at the then market price, to wit, $238,240; that the plaintiff was compelled to pay such difference; that his commissions on said transaction amounted to $400; that June 20, 1883, the plaintiff made a statement in writing of said transaction to the defendants, showing that the defendants were indebted to the

plaintiff thereon in the sum of $48,300, besides said commissions; that July 21, 1883, the defendants caused to be paid thereon to the plaintiff $24,390; that there was still due thereon to the plaintiff the sum of $24,390, with interest at six per cent. from said last-mentioned date; that under the laws of Illinois all joint obligations and covenants were joint and several,— and the plaintiff demands judgment accordingly.

The answer alleges, in effect, that June 16, 1883, said firm failed; that a receiver of their assets and property was then appointed by a court in Illinois; that all, or nearly all, the indebtedness of said firm was nominally for the purchase of lard and other commodities, but really gambling transactions; that said receiver ascertained and informed the plaintiff and other creditors of said firm that the assets of said firm were not enough to pay fifty cents on the dollar; that various suits had been commenced against the defendants; that said receiver, on behalf of said firm and their creditors, including the plaintiff, asked said *McGeoch* and one Wells, with whom he had been dealing, to pay him, as receiver, fifty cents upon the dollar, and named the sum of $450,000 as sufficient; that *McGeoch* and Wells reluctantly consented to unite and each pay one half of that amount, on condition that the receiver would obtain a final settlement and full discharge of all claims against said firm, and of said receiver on behalf of said firm, against said *McGeoch* and Wells, jointly and severally, and as a full settlement and discharge of all matters and disputes and of all claims between *McGeoch* and Wells; that at a meeting of the creditors of said firm represented on the board of trade, including the plaintiff, the receiver submitted to such creditors, on behalf of said firm, the proposition to pay fifty per cent. of their indebtedness in full settlement thereof, including the plaintiff's; and said creditors, including the plaintiff, knowing all the facts, accepted said settlement, and the defend-

ants agreed to waive their defense of illegality on said several claims, and thereupon the said creditors entered into and signed an agreement with said firm, through its receiver, to accept payment of fifty per cent. of their indebtedness, in full, in consideration of a prompt settlement and to avoid litigation; that *McGeoch* and Wells were informed that the creditors had signed such agreement, and on the faith of such agreement, and to make such complete settlement, including a full settlement of the claim of the plaintiff, said *McGeoch* and Wells each paid to said receiver $225,000, and said receiver afterwards paid said creditors of said firm, including the plaintiff, said fifty per cent., and procured from all of them, including the plaintiff, a complete release of said firm, and a dismissal and discontinuance of such suits, including one brought by the plaintiff, and also a release of all claims of said firm against Wells and *McGeoch*, jointly and severally, whereby Wells and *McGeoch* had a complete settlement of all such disputed claims.   Such facts were also set up by way of an estoppel *in pais.*   The answer alleged, in effect, that said transactions on said board of trade were illegal; that they grew out of gambling transactions; and also alleged that the amount so represented as being fifty per cent. of the defendants' indebtedness to the plaintiff was falsely stated by the plaintiff to be $17,644 more than the true amount, which the defendants asked judgment for by way of counterclaim.

Upon the trial it was stipulated upon the part of the defendants, in effect, that while they claimed that all of said contracts on said board of trade were illegal, still, without waiving either or any of such defenses, the said *McGeoch* admits, for the purpose of preventing this case from being referred, that if it be decided that the contracts in suit were valid contracts, and the defenses mentioned should not be established; then that it may be accepted and admitted that June 9, 1883, the plaintiff entered into the contracts of

purchase of the lard substantially as mentioned in the complaint, and that the payment by said receiver was as and for a full settlement, compromise, and discharge of the plaintiff's claims. Thereupon the plaintiff offered in evidence the admissions in the answer, in addition to such stipulation; also a deposition of the plaintiff taken under sec. 4096, R. S.; and thereupon the plaintiff was sworn and examined as a witness in his own behalf, and upon his cross-examination by the defendant's counsel he testified, in effect, that he collected the $24,390 mentioned in a check signed. by said receiver, and that he thereupon signed the receipt marked " *Exhibit D*," which exhibit was thereupon offered in evidence, and is in the words following, to wit:

"CHICAGO, July 20, 1883.

" *Peter McGeoch, George S. Everingham, Frank A. Crittenden, John H. Peacock,* and *William R. Harvey,* comprising the firm of McGeoch, Everingham & Co., being in failing circumstances and unable to pay their debts in full, now, in consideration thereof and of the receipt of the sum of money hereinafter named, the undersigned creditor, J. M. Ball & Co., hereby acknowledges receipt from them, by the hand of John R. Rensley, receiver in chancery of their estate and effects, of the sum of twenty-four thousand three hundred and ninety dollars (24,390), as a full compromise and adjustment of the validity, and in final settlement, satisfaction, and discharge, of all claims and demands of the undersigned against said firm and individuals.

"$24,390.00.                                    J. M. BALL & Co.,

    "Exhibit — NEEDHAM,                              Creditor.

        "S. E. DALE.

            "Notary, CHAS. W. NEEDHAM."

Subsequently, upon redirect examination, the plaintiff was asked how he came to sign that receipt, to which the defendants objected as immaterial. The court thereupon stated that they did not attack that evidence. The defend-

ants' counsel then stated that the receipt had been offered in evidence for all purposes. The court thereupon directed the question to be answered. The defendants' counsel then stated: "We do not object to anything in evidence of it as long as you do not attempt to show anything that would change the wording of it." The plaintiff was then asked, on redirect examination, how he came to sign that release or receipt, and answered: "I signed this receipt — Why, there had been a compromise paper signed previously. Defendants' counsel: Wait a moment, right here. There had been a compromise paper signed previously, and that was signed in pursuance of it? Answer. 'It was signed in pursuance of it.' Question. Let me ask you if this is the compromise paper [showing him Exhibit C]. A. Yes, sir. Counsel for the plaintiff: We offer it in evidence." A copy of which Exhibit C, with the signatures omitted, is in the words and figures following, to wit:

"CHICAGO, ILLINOIS, July 2, 1883.

"To the creditors of the firm of McGeoch, Everingham & Co., represented upon the board of trade of the city of Chicago: We submit the following proposition of compromise, to be received by each creditor in full settlement and liquidation of all unsecured claims and the deficiencies upon all secured claims after applying the margins and collaterals up as security therefor: provided, this proposition shall not be binding upon us until each and all of said creditors have signified their acceptance hereof by signing the acceptance hereunder written.

"*Proposition:* — We will pay fifty cents upon the dollar in cash within ten days from date of the said acceptance hereof. The amount of each claim to be settled and adjusted by John R. Rensley, receiver: *provided*, that if said Rensley and any creditor cannot agree as to the amount of any claim, then, and in every such case, the amount of such claim shall be determined by the board of arbitra-

tors of said board of trade in the mode prescribed by the rules of said board.

"Respectfully submitted.

"We, the undersigned, creditors of the firm of McGeoch, Everingham & Co., in consideration of the prompt settlement above proposed, and to avoid litigation, hereby accept the above settlement as aforesaid.

"Date of signing.                              Name."

The defendants objected to Exhibit C being received in evidence, as immaterial and irrelevant, and further objected to this examination. Thereupon, the court having indicated that such evidence should all be excluded, the plaintiff's counsel offered, in effect, to prove that this receipt or release was given in pursuance of the composition agreement, and that the plaintiff's signature to the composition agreement was obtained by the following fraud: (1) Misrepresentations on the part of the receiver and other creditors of the defendants as to the assets of said firm, to the effect that they were at least $100,000 less than they actually were, exclusive of the claim against said Wells; (2) that a large claim against said Wells among the assets of said firm, amounting to about $1,000,000, was concealed from the plaintiff, and that he had no knowledge thereof, and that it was represented to him that certain parties in Milwaukee were gratuitously helping him, but that said Wells was paying only a small percentage of his actual debts to said firm, and was released from upwards of $5,000 of such debt through said device; (3) that certain of the board of trade creditors of said firm named were induced to sign said composition agreement under the promise of bonuses or bribes made before such signing, and that afterwards, and in pursuance of such agreements, such creditors were paid in full in some cases, in addition to the fifty per

cent. mentioned, and in other cases received large sums
under the pretense of the same being attorney's fees, pay-
ment for services, and such like matter, and that a large
part of the assets of said firm so concealed was afterwards
distributed to the members of the firm, and to attorneys and
others for procuring signatures to said agreement; (4) that
the plaintiff signed said composition agreement relying upon
such representations; (5) that the plaintiff was ignorant of
the real facts; (6) that, in connection with said fraud, the
plaintiff offered to prove that the validity of his claim so
compromised was never challenged or called in question
until by the answer in this case; (7) and further offered to
prove that there was no dispute or contest between the
plaintiff and defendants at the time of said compromise.

Each and all of said offers were rejected by the court,
and the court thereupon ruled that said release was bind-
ing, notwithstanding all that was alleged against it, and
thereupon directed the jury to find for the defendant, and
they so found accordingly. From the judgment entered
thereon the plaintiff appeals.

For the appellant there were briefs by *C. H. Hamilton*
and *Turner & Timlin*, attorneys, and *James G. Flanders*,
of counsel, and oral argument by *C. H. Hamilton*, *W. H.
Timlin* and *James G. Flanders*. They argued, among
other things, that the instrument of July 20 is not a con-
tract or agreement, but is a mere receipt, which could be
contradicted or explained by parol testimony. The words
"full compromise and adjustment," etc., do not change its
character as a receipt. They are words of acknowledg-
ment, not of contract, for neither party to the receipt
agrees to do anything in reference to the subject matter of
the receipt. *Smith v. Schulenberg*, 34 Wis. 41; *Fitch v.
Sutton*, 5 East, 230; *Harriman v. Harriman*, 12 Gray, 341;
*Ryan v. Ward*, 48 N. Y. 204; *Jameson v. Barber*, 56 Wis.
640; *Catlin v. Wheeler*, 49 id. 523; *Lee v. Lancashire &*

Ball vs. McGeoch and others.

*Yorkshire R. Co.* L. R. 6 Ch. App. Cas. 527; *Lawrence v. Schuylkill Nav. Co.* 4 Wash. C. C. 562; *Foersch v. Blackwell*, 14 Barb. 607; *Corn Exchange Bank v. Scheppers*, 111 U. S. 440; *Price v. Treat*, 29 Neb. 536; *Abbe v. Eaton*, 51 N. Y. 410; *Wise v. Rosenblatt*, 12 N. Y. Supp. 288; *Powell v. Powell*, 52 Mich. 432. It cannot be said from a mere inspection of the two writings that the receipt was an entirely new and independent agreement, upon a different consideration, and having a different effect from the composition agreement. The claim of the plaintiff, in support of which he offered proof, is, in brief, that the receipt was given in pursuance of and to carry out the previous composition, and that such composition was obtained by fraud, of which the plaintiff had no knowledge when he gave the receipt, and therefore that the fraud affected the receipt equally with the compromise. See Kerr, Fraud & M. 296–299; *Michoud v. Girod*, 4 How. 503; *Parsons v. Hughes*, 9 Paige, 592; *Crowe v. Ballard*, 1 Ves. 215, note; *Trefz v. Knickerbocker L. Ins. Co.* 8 Fed. Rep. 177; *Tyler v. Black*, 13 How. 236.

For the respondents there were briefs by *Miller, Noyes & Miller*, and oral argument by *Geo. H. Noyes*. They contended, *inter alia*, that the release of July 20 is a bar to the plaintiff's action, although it were shown that the acceptance of the composition proposition of July 2 would be avoided by reason of the offers of evidence made by the plaintiff. No proof was offered to show that this release was obtained through any misrepresentation, concealment, or fraud. No questions were asked by the plaintiff when he signed it. *Cleaveland v. Richardson*, 132 U. S. 318–329; *Graham v. Meyer*, 99 N. Y. 611; *Dambmann v. Schulting*, 75 id. 55. The release is more than a mere receipt. It is a contract by which the plaintiff agreed to accept the amount named "as a full compromise and adjustment," etc. It cannot, therefore, be contradicted or varied by parol. The

acknowledgments contained in it are conclusive upon the plaintiff, and must be held as the true and only terms of the settlement and release finally agreed upon and concluded between the parties. *Cummings v. Baars*, 36 Minn. 350–353; *Kellogg v. Richards*, 14 Wend. 116; *Stapleton v. King*, 33 Iowa, 28; *Calkins v. State*, 13 Wis. 389–393; *Graves v. Dudley*, 20 N. Y. 76, 78; *Graves v. Friend*, 5 Sandf. 568; *Pardee v. Wood*, 8 Hun, 584; *Coon v. Knap*, 8 N. Y. 402; *McDougall v. Cooper*, 31 id. 498; *The Lady Franklin*, 8 Wall. 325; 1 Greenl. Evi. sec. 305; *Schweitzer v. Connor*, 57 Wis. 177; *Gilchrist v. Brande*, 58 id. 184; *Hoes v. Van Hoesen*, 1 Barb. Ch. 379; *Van Bokkelen v. Taylor*, 62 N. Y. 105. The instrument of July 20 is complete in itself; its meaning is clear and unquestionable; and it cannot, therefore, be contradicted or varied by parol. *Schultz v. Coon*, 51 Wis. 415, 416; *Hei v. Heller*, 53 id. 415, 418; *Hubbard v. Marshall*, 50 id. 322, 326; *Hennershotz v. Gallagher*, 124 Pa. St. 1; *Scholz v. Dankert*, 69 Wis. 416; *Dair v. U. S.* 16 Wall. 1. The two writings, being unlike in their nature, based upon different considerations, made between different parties, and not contemporaneous, are to be construed as the court construed the two agreements in *Herbst v. Lowe*, 65 Wis. 316, and as courts generally construe a preliminary and a final agreement when executed at different times. *Whitney v. Smith*, 33 Minn. 124; *Kerr v. Calvit*, 12 Am. Dec. 537; *Clifton v. Jackson I. Co.* 74 Mich. 183; *Davenport v. Whisler*, 46 Iowa, 287; *Carter v. Beck*, 40 Ala. 599; *Davis v. Clark*, 47 N. J. Law, 338.

CASSODAY, J. The pleadings, stipulation, documentary evidence, rulings of the court, and offers of testimony on the part of the plaintiff are voluminous, but are sufficiently indicated in the foregoing statement. The claim of the plaintiff is for a balance due for a liability incurred and money advanced at the request of the defendants and for

their use and benefit, in June, 1883, in the purchase and sale of lard on the board of trade in Chicago. The principal defense alleged is, in effect, an accord in writing, whereby the plaintiff and other creditors of the defendants upon the board of trade agreed to accept fifty per cent. of their indebtedness in full settlement of the same, followed by the plaintiff's payment of the amount of his claim in satisfaction thereof, evidenced by a receipt and release in writing, signed by the plaintiff. The plaintiff, to prove his case, among other things, was sworn and examined in his own behalf. On cross-examination by the defendants' counsel he testified that he received the fifty per cent. mentioned, and thereupon gave the receipt and release dated July 20, 1883, and which appears in the foregoing statement as "Exhibit D;" and the same was thereupon offered in evidence by counsel for the defendants, without objection. Subsequently, on redirect examination, he testified to the effect that he signed the receipt in pursuance of a compromise paper which had previously been signed, which paper or accord in writing was dated July 2, 1883, and thereupon identified by the witness, and a copy thereof, with the signatures omitted, is designated in the foregoing statement as "Exhibit C." Exhibit C was thereupon offered in evidence by the plaintiff's counsel, but was finally excluded, together with each and all the several offers of testimony mentioned in the foregoing statement. Such rulings were put upon the ground, in effect, that although the proposed evidence of false representations and fraud was sufficient to avoid the accord, yet that the release was given several days thereafter and makes no reference to it and settles matters not mentioned in it, and must therefore be regarded as a separate, independent, and voluntary release, based upon a different consideration, and having a different effect.

It is claimed that such rulings were justified by the prin-

ciple of law so firmly settled in this state, to the effect
"that, in the absence of *fraud or mistake*, proof of ante-
cedent or contemporaneous verbal agreements between
contracting parties cannot be received to alter or control
their written agreement." *Herbst v. Lowe,* 65 Wis. 320;
*Hubbard v. Marshall,* 50 Wis. 322; *Hooker v. Hyde,* 61
Wis. 208; *Liebscher v. Kraus,* 74 Wis. 388; *Andrews v.
Youmans,* 78 Wis. 58. "This is on the theory that all
such prior negotiations are either merged in or excluded
by the contract finally made. The same is true in respect
to any prior preliminary agreement, in so far as it is cov-
ered by, or in conflict with, the final contract." *Ibid.* It
will be observed that the rule stated has no application
when such written agreement has been procured by fraud.
*Ibid.* See, also, *Zimmer v. Becker,* 66 Wis. 527; *Kercheval
v. Doty,* 31 Wis. 476.

As indicated, the principal defense here alleged was a
full settlement by way of accord and satisfaction. Not
being a counterclaim, nor pleaded as a part of a counter-
claim, it was to be deemed controverted by the plaintiff as
upon a direct denial or avoidance, as the case might re-
quire. Sec. 2667, R. S. Upon the issue thus raised, it was
competent for the plaintiff to prove that his signature to
the release was procured by false representations and fraud.
*Leslie v. Keepers,* 68 Wis. 127–8, and cases there cited. This
is, in effect, conceded, but it is claimed that the false repre-
sentations sought to be proved were confessedly operative
only in procuring the accord, but did not extend to the
procuring of the release. It will be observed from the
foregoing statement that the compromise paper alleged in
the answer provided for the payment by the receiver of
fifty cents on the dollar; that the payment therein alleged
to have been made, and for which the release was given,
was for the same per cent. and by the same receiver. Ex-
hibits C and D substantially correspond with the compro-

mise paper and release so alleged in the answer. The release purports to be in consideration of $24,390, paid by the receiver "as a full compromise and adjustment," etc.; and that is the same amount admitted in the complaint to have been paid, and alleged in the answer to have been paid, and stipulated by the defendants to · have been paid, as and for a full settlement and compromise. The release purports to be given as a compromise and settlement, and presupposes such an agreement to compromise, and yet there is no pretense that there was any more than one agreement for such compromise. The accord had its inception in the form of a proposition from the defendants to their creditors upon the board of trade, not to be binding "until each and all of said creditors" had signed the written acceptance thereof. Whether the signing of such acceptance by the several creditors was a sufficient consideration to make the proposition binding upon all, is not involved in this appeal. In the rulings of the learned trial judge he treated the accord as not a binding composition among creditors, but, at most, as an accord between the plaintiff and the defendants. Of course, it is well settled that a mere accord without satisfaction is not binding. *Palmer v. Yager*, 20 Wis. 91; *Otto v. Klauber*, 23 Wis. 471; *Schlitz v. Meyer*, 61 Wis. 418; *Sieber v. Amunson*, 78 Wis. 682; 1 Am. & Eng. Ency. of Law, 94.

The accord is executory in its nature. It called for payment to be subsequently made by the defendants. It did not in express terms call for a receipt and release on the part of the plaintiff and the other creditors, but it required "the amount of each claim to be settled and adjusted" by the receiver, and this fairly implied the taking of such receipt and release. It is true the proposition to compromise emanated from the firm alone, and the accord is silent as to the "validity" of the claim; whereas the release acknowledges the receipt of the amount paid by the plaintiff

Ball vs. McGeoch and others.

"as a full compromise and adjustment of the *validity,* and in final settlement, satisfaction and discharge," of all claims against the firm and the individual members thereof. But the accord did provide for the determination of any disagreement between the receiver and any creditor as to the amount of any claim, and that such payment should be "in full settlement and liquidation" of all such claims; — clearly implying that the fifty cents on the dollar of the amount so agreed upon should be in full settlement and liquidation of such claims, respectively, whatever might be the contention of the parties respecting the same. Besides, the invalidity of the plaintiff's claim was alleged in the answer, and under the statute the same was deemed controverted by the plaintiff, and expressly reserved for the determination by the court in the stipulation on the part of the defendants. It does not conclusively appear that there is a necessary repugnance between the accord and the release. They both relate to the same subject matter. The release contains no new contract, like some of the cases cited. For aught that appears upon the face of the papers, the release may have been given on the receipt of the money in satisfaction of the accord. If it was so given, and if the plaintiff's signature to the accord was procured by the false representations and fraud of the defendants and their agents in the matter, and the plaintiff, without knowing the facts, was induced by such accord, false representations, and fraud, to give the release, then we are unable to perceive upon what principle of law the release should be held binding upon him. On the contrary, we are forced to the conclusion that the plaintiff was at liberty to show that such accord was procured by false representations and fraud, and that the same were carried forward and operative in procuring the release. The question presented seems to come within well-established elementary rules. 1 Greenl. Ev. §§ 283, 284, and cases there cited. See, also, in addition

to cases cited by counsel, *Harman v. Richards*, 10 Hare, 81; *Richards v. Hunt*, 6 Vt. 251, 27 Am. Dec. 545; *Stafford v. Bacon*, 1 Hill, 532; *King v. Leighton*, 100 N. Y. 386; *Olvey v. Jackson*, 106 Ind. 286; *Strong v. Strong*, 102 N. Y. 69; 1 Am. & Eng. Ency. of Law, 106 (17), and cases there cited.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.