Joseph Stock, Appellee, v. Joseph Christle, Appellant.

**Landlord and tenant:** COMPROMISE AND SETTLEMENT: RECOVERY OF RENT PAID: BURDEN OF PROOF: EVIDENCE. One who seeks to set aside a settlement amicably made and to recover money voluntarily paid thereunder must establish his claim by a clear and satisfactory preponderance of the evidence.

Thus where a landlord did not undertake to lease any given amount of tillable land, although the rent was estimated upon the basis of acreage, the fact that he could not use every acre to advantage was not a defense to payment of the rent; and upon the whole evidence the plaintiff is not entitled to recover any part of the rent paid upon an amicable settlement, on the ground of a shortage in the land subsequently discovered.

*Appeal from Cedar Rapids Superior Court.*—Hon. C. B. Robbins, Judge.

FRIDAY, MAY 5, 1911.

Action in equity to reform the stipulations of a written contract of lease and for recovery of money alleged to have been overpaid as rent. Decree for plaintiff, and defendant appeals. *Reversed.*

*Redmond & Stewart,* for appellant.

*Crissman, Linville & Churchill,* for appellee.

Weaver, J.—In October, 1903, the defendant, by written lease, let to the plaintiff a certain farm or tract of land for a term of three years. The writing described the land as being in a certain named section on the east side of Cedar river, and as containing "about eighty-seven acres," but did not describe it by metes and bounds, or

designate what fractional part of the section it constituted. For the use of the leased premises, plaintiff undertook, according to the writing, to pay an "annual rental of $304.50" in specified installments. Under the lease plaintiff went into possession of the premises and remained there two years. At the end of this period he had an opportunity to obtain another farm, which he preferred, and at his request the defendant consented to an abandonment of the lease for the remainder of the term, and plaintiff removed from the premises. The business between the parties was settled amicably, and plaintiff paid the stipulated rent for the two years in full. Thereafter defendant leased the land to one Hucle, and two years later some dispute and litigation arose between them over the actual acreage covered by the latter's lease, and measurements were made which, it is claimed, indicated an area of materially less than eighty-seven acres. On the strength of the information thus received, plaintiff was led to believe he had paid more than was actually due defendant and instituted this action, alleging that while the lease under which he occupied this land mentions the sum of $304.50 as the gross yearly rental, his actual agreement with defendant was to pay rent at $3.50 per acre for eighty-seven acres, which both parties erroneously believed to be the actual measurement, and that acting on such erroneous belief plaintiff paid defendant more than was due, and he asks that the lease may be reformed to express the true agreement made, that the shortage in said land be ascertained, and that he recover the amount of his overpayment.

Defendant denies the plaintiff's claim and says the farm leased to plaintiff was an irregular tract, the exact acreage of which was not known to him with any degree of exactness, and that said land was crossed by a railway right of way of which both parties had full knowledge at the time; that the land was leased for a gross sum, and

not by the acre, and that at the time their relation of land-lord and tenant was terminated the parties had a full and complete settlement of all their dealings and transactions, and the lease was then and there, by mutual agreement, terminated and canceled. No reply seems to have been filed, but the affirmative matters pleaded in evidence may be treated as denied by operation of law. The trial court found for the plaintiff that the land was leased by the acre, and that the area fell short of eighty-seven acres by the exact amount of land contained in the railroad right of way, being five and eighty-six one hundredths acres, and on this basis rendered judgment against the defendant.

A careful examination of the record leads us to the conclusion that the judgment appealed from is without sufficient support in the evidence, and that the claim in suit is devoid of equity. These parties made their lease, and, as we have seen, after a period of two years amicably dissolved their relations as landlord and tenant, settled their matters of dealing, and the balance due from plain-tiff was paid by him without controversy or dispute. The fact that the land was crossed by a railroad right of way was at all times well known to both. Plaintiff never ex-pected to get any beneficial use of the land so occupied, and in making settlement with defendant made no claim of injury or damage on that account. His position now is that defendant undertook to lease him eighty-seven acres of land, exclusive of the right of way; that he in ignor-ance of this shortage paid on the basis of the estimated area, and that defendant is under equitable obligation to return a proportionate part of the money so received. He claims that, although the matter of the right of way was not mentioned in the negotiations leading up to the lease, he had a right to rely upon defendant's description of the land as containing "about eighty-seven acres," as an assur-ance of that quantity of land outside of that part occu-pied by the railway.

Assuming for the present the correctness of plaintiff's legal proposition, an examination of the testimony here presented reveals a substantial failure of proof of any material shortage in measurement of the premises actually used and occupied under the lease. The land was purchased by defendant in seven or more different parcels, is irregular in shape, and is bounded on one side for about a half mile by the Cedar river. No one undertakes to describe it by fractions of a section according to government survey. The only witness who attempts to speak of the area of the land from actual measurement is a surveyor who made a survey in connection with the controversy of defendant and Hucle. The defendant was not present when the survey was made, and the witness did not consult the defendant's deeds or obtain the description of his land from the public records. He says in one place that the land as measured by him contained seventy-seven and fifty-three one hundredths acres outside of the railroad right of way. Concerning his knowledge of the true location of the lines, he states on cross-examination:

Don't know exactly where the government lines are along the river bank. . . . Didn't examine the field notes to find out where it was located. I made this plat to give the court an idea of what Mr. Hucle claimed was in Christle's farm—the portion of land which he was occupying. Did not know that Christle's deeds included two and one-half to four acres above the wagon road, and did not include it in my totals. Did not include the small tract where Christle lived. If I had Christle's deeds and surveyed what was covered by them, the ground might not fit the boundaries shown on my plat. There might be a wide difference. I took those boundaries from what Hucle told me were the boundaries of the ground he occupied. . . . I don't pretend that the plat of my survey is a survey of the ground covered by Christle's deeds. It is a survey of ground under the direction of Hucle that Hucle claimed he occupied. I omitted such lands as he

told me to omit, and the lands inside of those boundaries is the land that he had rented.

This witness also appears in one place to have figured out that the land so designated by Hucle contained seventy-one and eight-three one hundredths tillable acres and eleven and ninety-six one hundredths acres of pasture. If this estimate was correct, it shows a shortage of but three and twenty-one one hundredths acres, and it appears from the record, without substantial controversy, that there was a piece of about three acres, not included in that survey, which was in fact a part of defendant's farm. This tract was low and probably not tillable, but plaintiff could not rightfully claim any deduction on that account.

Defendant did not undertake to lease to him any given amount of tillable land, and, even if it be conceded that the lease agreed upon was estimated upon the basis of acreage, the fact that defendant could not cultivate or pasture every acre to his advantage or profit is immaterial and constituted no defense to defendant's demand for rent.

When a plaintiff comes into court with a stale claim on which he asks to have an amicable settlement set aside and to recover money voluntarily paid to his creditor, it is but just that he be required to establish his case by a clear and satisfactory preponderance of evidence. *Hervey v. Savery,* 48 Iowa, 313; *Clute v. Frazier,* 58 Iowa, 268; *Strayer v. Stone,* 47 Iowa, 333; *Wachendorf v. Lancaster,* 61 Iowa, 509; *Hunt v. Gray,* 76 Iowa, 268; *Sauer v. Nehls,* 121 Iowa, 184. The burden of proof is heavily upon a plaintiff who seeks to set aside a settlement of an account or claim. *Ball v. McGeoch,* 81 Wis. 160 (51 N. W. 443); *Currey v. Lawler,* 29 W. Va. 111 (11 S. E. 897); *Marsh v. Case,* 30 Wis. 531; *Phillips v. Belden,* 2 Edw. Ch. (N. Y.) 1; *Chubbuck v. Vernam,* 42 N. Y. 432. To quote the language of Chief Justice Marshall: "No practice could be more dangerous than that of open-

ing accounts which the parties themselves have adjusted, on suggestions supported by doubtful or only probable testimony." *Chappedelaine v. Dechenaux,* 4 Cranch, 306, 2 L. Ed. 629.

We have no difficulty in holding that the testimony in the case at bar falls decidedly short of that measure of clearness and certainty which the law requires for the opening of a settled claim, and especially one which has been so long acquiesced in. There is not the slightest support for any suggestion of fraud or intentional deceit on part of the defendant in making the lease. He told the plaintiff that he gave his estimate in the quantity of land from the deeds under which he obtained title, and the plaintiff, before he began work under the lease, asked and received permission to examine the deeds, and, so far as appears, was perfectly satisfied with what they disclosed. If, under such circumstances and after his lease is terminated, and he has paid his rent without a murmur or suggestion of dissatisfaction, a tenant may wait two years in silence and then return with the assertion that the land measures less than he supposed it did, and, upon such weak and uncertain testimony as the record here discloses, have the settlement reopened and compel a return of a substantial part of the rent so voluntarily paid, then all attempts at the amicable adjustment of business dealings and business interests may well be abandoned as idle ceremony upon which neither party can rest with any degree of safety or confidence.

This conclusion renders unnecessary any discussion by us of other questions argued by counsel. In our judgment the decree of the trial court should be reversed, and the petition dismissed at plaintiff's costs. *Reversed.*