ALBRECHT, Appellant, vs. THE MILWAUKEE & SUPERIOR RAILWAY COMPANY, Respondent.

*November 4— November 24, 1896.*

*Railroads: Personal injuries: Negligence: Employee controlling switch: Court and jury: Evidence: Release: Fraud.*

1. An employee of a railway company whose duties were to couple cars, set brakes, uncouple cars, *open and close switches*, and to follow the switch engine from yard to yard, taking cars in and out of spur tracks, and who had keys to the switches,— has *charge or control* of a switch within the meaning of sec. 1816a, S. & B. Ann. Stats. (ch. 438, Laws of 1889), making railroad companies liable for the negligence of such persons.

2. In an action by a brakeman to recover for personal injuries occasioned by a collision between the train upon which he was employed and a switch engine which had been run out upon the main track

Albrecht vs. The Milwaukee & Superior R. Co.

at about the usual time for the train to pass, evidence tending to show, among other things, that the engineer of the switch engine had a better view of the main track than the person under whose direction he was acting when the latter turned the switch, and that he told such person he could make the station before the arrival of the train,— rendered it error for the trial court to hold as matter of law that such engineer was not negligent.

3. Evidence that the plaintiff in such a case, when he executed a release in full, was confined to his bed and had "fever and lots of pain;" that weights were attached to his feet; that when the representatives of the defendant called upon him no one was at home except his mother; that they asked him if he needed money, and told him he would probably be laid up about four months and would then be all right to work again; that they would pay him four months' wages in advance and the probable amount of his doctor's bill, and that he would have to give them a receipt for the money; that he signed the receipt without its being read to him, supposing it to be a receipt for the four months' wages and the doctor's bill; that he would not have signed it if he had known that it was a release in full; and that neither he nor his mother could read English,— is *held* sufficient to require the submission to the jury of the question whether the plaintiff was induced to execute such release by any excusable mistake, deception, or fraud.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge. *Reversed.*

The facts of the case are stated in the opinion.

For the appellant there was a brief by *D. H. Sumner* and *Ryan & Merton,* and oral argument by *E. Merton.* They argued, among other things, that the plaintiff was suffering terrible pain and was half crazed when he signed the paper in question; and not only that, but upon inquiring what this paper was which was shown to him to sign, he was informed by the agent of the defendant that it was merely a receipt showing that they had advanced him four months' wages and sufficient money to pay the doctor's bill. Under such circumstances the questions whether he did all that an ordinary man would do under similar circumstances, and whether fraud and undue influence were practiced upon him at the

time, were for the jury. *Walker v. Ebert*, 29 Wis. 194; *Kellogg v. Steiner*, id. 626; *Butler v. Carns*, 37 id. 61; *Sheanon v. Pac. Mut. L. Ins. Co.* 83 id. 507; *Butler v. Regents of University*, 32 id. 132; *Schultz v. C. & N. W. R. Co.* 44 id. 638, 645; *Bussian v. M., L. S. & W. R. Co.* 56 id. 326, 333; *Lusted v. C. & N. W. R. Co.* 71 id. 391; *Lord v. Am. Mut. Acc. Asso.* 89 id. 19.

For the respondent there was a brief by *Winkler, Flanders, Smith, Bottum & Vilas*, and oral argument by *E. P. Vilas*.

CASSODAY, C. J.    This action is to recover damages for personal injuries sustained by the plaintiff, while in the employment of the defendant, by reason of a collision of the regular train west, upon which the plaintiff was brakeman, and a switch engine coming from a spur track out on the main track near Lannon station.    At the close of the evidence the court directed a verdict in favor of the defendant, and from the judgment entered thereon the plaintiff brings this appeal.

The facts are to the effect that the railroad of the defendant was about twelve miles long, and ran from Granville, in Milwaukee county, west, through Lannon station, to Sussex, in Waukesha county; that there were several stone quarries near Lannon, and there were several spur tracks, diverging from various points on the main track, to the different quarries,— including one known as "Keifer's Stone Quarry," which was situated about three quarters of a mile eastward from Lannon station, and about forty rods southerly from the main track; that the spur track ran from Keifer's quarry in a northeasterly direction to the main track; that, September 30, 1892, the regular train coming from Granville was due at Lannon at 5 o'clock p. m.; that, just before that train was so due, switch engine No. 1, used for switching cars to and from the main track and the quarries, with

Mat Jens as engineer, and Hickson, yardmaster at Lannon, as brakeman, had put two cars into Howard's quarry, and returned to Lannon station, when they, by order of the superintendent, took two stock cars to Keifer's quarry, and left them there, and then returned to the spur track to within a few rods of the spur switch, and there stopped; that it was then about 5 o'clock; that Hickson and Jens then conferred with each other as to whether they could make Lannon station before the arrival of the regular train from Granville, or should wait until after it should pass; that they, or one of them, concluded that they could make the station, and so Hickson went to the switch, where he could look along the track for a quarter of a mile, and could see no train; that he then threw the switch, and signaled the engineer to come ahead, and he did so; that Hickson did not look again until he heard the whistle, and then the train was only 400 or 500 feet distant, and the switch engine had gone back onto the main track, and it was impossible to get it back onto the spur track before being struck by the coming train. As a result of the collision, the plaintiff, a brakeman of the train, was severely injured.

This case was here upon a former appeal, and was then reversed for errors in the ruling made and instruction given. 87 Wis. 105. Upon the last trial a verdict was directed in favor of the defendant. Such direction is sought to be sustained on two grounds.

1. It is conceded that the accident happened through the negligence of Hickson, who was then in the employment of the defendant; but it is contended that the defendant is not liable, because Hickson was not, at the time and place of the accident, a "yardmaster" within the meaning of sec. 1816a, S. & B. Ann. Stats. (ch. 438, Laws of 1889). That act was sufficient to make the defendant liable to the plaintiff in case such damage was "caused by the negligence" of its "yardmaster" or "engineer, or of any other employee,

who" had "charge or control of any . . . switch."
Although that act was repealed by ch. 220, Laws of 1893,
yet such repeal did not affect then existing actions or causes
of action. Id. While Hickson may have acted in the ca-
pacity of yardmaster at Lannon, yet it is doubtful whether
he can be regarded as acting in that capacity when switch-
ing cars in or out of Keifer's quarry. We assume, for the
purposes of this case, that he was not. It is said by counsel
for the defendant that his duties "were to couple cars, to
set brakes on cars, and uncouple cars, *open and close switches*,
and to follow the switch engine from yard to yard, taking
cars in and out from the quarries," and that "he had a
brakeman with him who performed similar services, coupling
and uncoupling cars, opening and closing switches," and that
"they both had keys" for that purpose. It would seem
that Hickson, at the time and place in question, had "charge
or control" of the "switch" to the spur track, and hence
was one of the employees named in the act. But, were it
otherwise, still the testimony tends to prove that the engi-
neer of the switch engine, in answer to a question by Hick-
son, told him that he could make the station before the
arrival of the train, and it appears that he was in a position
to see further down the track than Hickson could without
going out onto the main track. We do not think the trial
court, upon the evidence in the record, was justified in hold-
ing that the engineer was free from negligence. He was
one of the persons expressly named in the act, and, if Hick-
son had "charge or control" of that switch, then he was
also one of the employees mentioned in the act.

2. It is contended that, even if the defendant was origi-
nally liable for the injury, yet that, eleven days after it was
incurred, the same was, for a good consideration paid to
the plaintiff, fully compromised and released, and that the
plaintiff at the time executed and delivered to the defend-
ant a written instrument, reciting a consideration of $225,

whereby he forever discharged the defendant, its "agents and employees, from any and all liability by reason of said injuries." Upon the former appeal the judgment was re-versed because the trial court had charged the jury to the effect that the plaintiff might avoid such compromise and release "by merely showing that, at the time he signed it, he did not know its contents or effect." 87 Wis. 109. Mr. Justice PINNEY there states the well-established rule as to the binding force of written contracts, in the absence of fraud or mistake, and he adds: "This is, no doubt, the true rule, in the absence of proof to show that the party had been deceived, misled, or overreached." See, also, *Herbst v. Lowe*, 65 Wis. 321; *Ball v. McGeoch*, 81 Wis. 171. Among other things, he there said: "There is no pretense that the plaintiff was induced to sign the release through fraud or misrepresentation, or that any deception was practiced by misreading it to him." *Id.* Upon the last trial the plaint-iff testified to the effect that, at the time of signing the written release in question, he was confined to his bed and "had fever and lots of pain;" that weights were attached to his foot; that Blair and Burch, representing the defend-ant, called upon him; that no one else was present, except his mother; that neither he nor his mother could read Eng-lish; that Blair or Burch asked him if he was in need of money; that he answered in the affirmative; that they then told him that he would probably be laid up about four months, and would then be all right, and could go to work again; that they would pay him four months' wages in advance and his doctor's bill; that they asked him how much he was getting, and when he told them, they figured up what the four months' wages would come to, and what they thought the doctor's bill would amount to, and told him they were going to help him further, if he was in need of any more; that they then told him he would have to give them a receipt for the money, and he signed the paper

without its being read to him; that, in signing it, he supposed it was a receipt for four months' wages and the doctor's bill; that he would not have signed it if he had known that it was such release; that they did not pay him anything at the time, but did afterwards. Under the repeated decisions of this court we must hold that such evidence was sufficient to take to the jury the question as to whether the plaintiff was induced to execute such release by any excusable mistake, deception, or fraud. *Lusted v. C. & N. W. R. Co.* 71 Wis. 398; *Sheanon v. Pacific Mut. L. Ins. Co.* 83 Wis. 527, and cases cited in the opinions. These cases are cited approvingly in *Sanford v. Royal Ins. Co.* 11 Wash. 653; *Union P. R. Co. v. Harris*, 158 U. S. 333. In this last case it was expressly held that when, in such an action, the defendant sets up a written release of such damages signed by the plaintiff, and the plaintiff, not denying its execution, claims that it was signed by him in ignorance of its contents, at a time when he was under great suffering from injuries, and in a state approaching to unconsciousness, caused by his injuries and by the use of morphine, the question is one for the jury, under proper instructions from the court.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.