*In re* ESTATE OF LOUIS GROSSMAN, deceased.

*Opinion filed October 24, 1898.*

1. WILLS—*what essential to establish a nuncupative will.* To establish a nuncupative will, under our statute, it is essential that two or more credible witnesses, who were present at the speaking and publishing of the will, declare on oath that they were present and heard the testator pronounce the words, and that he at the same time manifested his desire that the persons present, or some of them, bear witness to the will.

2. SAME—*fact that the testator's words are overheard by persons is not enough to establish a nuncupative will.* A draft of a will prepared from the testator's dictation while critically ill cannot be probated as a nuncupative will, though the words were spoken in the presence of two or more credible witnesses, where the testator did not manifest his desire that they act as witnesses, and where it appears that the will was to be prepared and submitted to the testator on the following day for approval and signature, before which time he died.

3. APPEALS AND ERRORS—*ground on which lower court refused probate is immaterial.* On appeal from the Appellate Court's judgment affirming a judgment of the circuit court refusing to admit an alleged nuncupative will to probate, the question is whether the circuit court's action was correct, without regard to the grounds on which it predicated its decision.

*In re Estate of Louis Grossman,* 75 Ill. App. 224, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding.

FLOWER, SMITH & MUSGRAVE, for proponent.

WILSON, MOORE & McILVAINE, ADOLPH D. WEINER, and ANDREW HIRSCHL, for the heirs.

Mr. JUSTICE CRAIG delivered the opinion of the court:

This was a petition by Emma Bricher in the probate court of Cook county, praying that a certain document purporting to be the nuncupative will of Louis Grossman be admitted to probate. The court heard the testimony in support of the alleged will and denied the application. An appeal was taken to the circuit court, where it was stipulated that a hearing might be had on the evidence heard in the probate court. After the evidence was read the court instructed the jury to find that the alleged nuncupative will of Louis Grossman is not and was not the nuncupative will of the said Louis Grossman, and the jury returned a verdict in conformity to the instruction. An appeal was then taken to the Appellate Court, where the judgment of the circuit court was affirmed.

The proposed will offered in evidence is as follows:

"Be it remembered, that heretofore, on or about the 11th day of June, A. D. 1894, the undersigned, Frederick Grossman, of 5623 Dearborn street, Chicago, Dr. A. M. Harvey, of St. Elizabeth Hospital, corner of Davis and LeMoyne streets, Chicago, Illinois, and William E. Burcky, of 6641 South Halsted street, Chicago, Illinois, were present at said St. Elizabeth's Hospital at the bedside of Louis Grossman, since deceased, a brother of the said Frederick Grossman. A consultation of physicians had just been held, and it had been decided that an operation should be performed upon the said Louis Grossman as the only chance of saving his life. After the consultation the undersigned, together with Frederick A. Grossman, were left alone with said deceased. Thereupon the undersigned, Frederick Grossman, stated to said deceased that an operation was the only means of saving his life, and that the time for the operation had been fixed for three o'clock on the afternoon of Monday, June 11. Said Frederick Grossman further asked said deceased whether, in view of the uncertainty of the result of said operation, he, Louis Grossman, wished to make any settlement of his matters. Louis Grossman said that he did. Thereupon Frederick Grossman secured pencil and paper. Louis Grossman then said: I give, etc.

"In testimony of the above we have set our hands hereto this 19th day of June, A. D. 1894.

FREDERICK GROSSMAN,
WILLIAM E. BURCKY,
ANDREW M. HARVEY.

"The foregoing was read to Frederick Grossman, William E. Burcky and A. M. Harvey in our presence and was subscribed by them in our presence.

F. E. PRESTLEY, M. D., St. Elizabeth Hosp.
W. R. LIVINGSTON, M. D., 269 LaSalle Ave.
WM. B. MCILVAINE, 502 N. State St.
H. C. ADCOCK, 4459 Evans Ave."

Louis Grossman died at ten o'clock in the forenoon of Monday, June 11.

It is not questioned that the alleged will was reduced to writing within the time required by law, nor is there any controversy in regard to the form of the instrument. It is, however, contended that the instrument is invalid as a will, for the reason that the alleged testator, as appears from the evidence, never desired or requested any

person present, at the time the alleged will was made, to bear witness that such was his will.

Section 2 of chapter 148 of the Revised Statutes provides that all wills and codicils by which property shall be devised shall be in writing and signed by the testator or testatrix. Oral wills are, however, excepted from the operation of this section of the statute by section 15, which provides as follows: "A nuncupative will shall be good and available in law for the conveyance of personal property thereby bequeathed, if committed to writing within twenty days after the making thereof, and proven before the county court by two or more credible, disinterested witnesses who were present at the speaking and publishing thereof, who shall declare, on oath or affirmation, that they were present and heard the testator pronounce the said words, and that they believed him to be of sound mind and memory, and that he or she did at the same time desire the persons present, or some of them, to bear witness that such was his or her will, or words to that effect, and that such will was made in the time of the last sickness of the testator or testatrix," etc.

The facts which led to the making of the alleged will may be briefly stated, as follows: Louis Grossman was taken suddenly ill. A consultation of physicians was held at St. Elizabeth's hospital, where he was then lying, on the evening of Sunday, June 10, 1894, and it was decided that an operation would have to be performed. The time for the operation was fixed for three o'clock on the following Monday afternoon. His brother, Frederick Grossman, had learned of his illness on Sunday afternoon and had gone over to the hospital with his son, Frederick A. Grossman, and his son-in-law, Dr. William E. Burcky. After the consultation was concluded Frederick Grossman asked the physicians whether his brother was in any danger of immediate death—whether it would be safe to postpone the settlement of his affairs. The reply of Dr. Fenger was, that the sick man would be in as good condi-

tion at three o'clock on the following day as he then was, but it was stated that it would be advisible to talk with him about his affairs, so that he could think them over before the operation and sign such papers as might be necessary. Thereupon the relatives mentioned, together with Dr. Harvey, the attending physician at the hospital, went to the room of the deceased and reported the result of the consultation. Frederick Grossman asked the deceased if he wished to make any disposition of his affairs,—whether he wanted to attend to it or whether he wanted it attended to. The answer given by the deceased, as Grossman testified, was as follows: "So he said, 'All right; you can take a statement of how I want it fixed,' and then Dr. Harvey gave me a slip from his prescription pad, or whatever it was, and a paper and pencil. This was in the presence of Andrew M. Harvey and William E. Burcky. I said, 'I will make a memorandum, and then fix it up in shape. If you think it is proper you can sign it and make a kind of will of it.' He said, 'All right.'" The deceased then made a statement of the disposition he intended to make of his property, and Frederick Grossman wrote down in pencil the statement as given. The next morning Frederick Grossman received a message by telephone that Louis was sinking very fast. He then wrote out a will from the data he had taken the previous night, but before it reached the hospital Louis was dead. The will in question was then prepared from the memoranda taken on the night of June 10.

In the probate court Frederick Grossman, William E. Burcky and Andrew M. Harvey, who were present when it is alleged Louis Grossman made his will, were called as witnesses for the purpose of proving the will. These witnesses concur in their evidence that they were present and heard the testator pronounce the said words, and that they believed him to be of sound mind and memory; but no one of the witnesses was able to testify that Louis Grossman desired them, or any person present, to bear

witness that such was his will. Indeed, all three of the witnesses testify that Louis Grossman said nothing whatever in regard to any person present bearing witness to the will. Dr. Harvey, one of the witnesses to the will, testified that Frederick Grossman said to him, "you are a witness," but that Louis Grossman never mentioned the word "witness" at all. In regard to the remark claimed to have been made by Frederick, he is contradicted by Frederick and by all others present, who testify that the subject was not mentioned by Frederick or any other person present.

As has been seen, in order to establish a nuncupative will the statute is imperative that two or more credible witnesses who were present at the speaking and publishing of the will must declare on oath that they were present and heard the testator pronounce the words, and that he at the same time desired the persons present, or some of them, to bear witness that such was his will, or words to that effect. The fact that the words of the will may have been spoken in the presence and hearing of the witnesses is not enough, but the testator must in some way manifest his intention and desire that those present, or some of them, should bear witness that such was his will. If the testator says nothing at all in regard to witnessing the will, how can it be said that he desired or wished those present to bear witness to the will? The construction of this statute came before this court several years ago in *Arnett* v. *Arnett*, 27 Ill. 247, and the court held that it was indispensable to the validity of a nuncupative will that the testator should request those present to bear witness that such was his last will, or that he should say or do something equivalent to such an expression. It may be true, as held in *Harrington* v. *Stees*, 82 Ill. 50, that no formal request of the testator to the attesting witnesses is required; but the desire of the testator must be clearly manifested in some way that the witnesses bear witness to the will. Here nothing was said by the tes-

tator on the subject, and hence the record fails to show that the testator had any wish or desire in regard to the matter. Indeed, the fact that the testator called upon no one present to bear·witness that the statement he made to Frederick Grossman was his will, would seem to indicate that the statement was given, not as a will, but as a memorandum from which a will might afterwards be prepared and submitted for execution. There is much evidence in the record tending to sustain this view. Dr. Burcky testified that after the memoranda had been read over to Louis, Frederick Grossman asked him if that was about what he wanted, "and he says yes, that is about what he wanted, and Frederick Grossman says, 'All right; I will write this up and send it over to-morrow morning, and you can look it over and if it is right you can sign it, and if it ain't right you can make it right.'" Frederick A. Grossman, the son, who was also present, testified: "After the substance of the will was stated father read over the notes to uncle Louis, and then told him that he would take these notes home and write them out and bring it in the next morning, and after he had seen it, if he wanted it that way, and if he wanted to make any changes that he would have ·time to have it changed and make the changes before he signed it." The fact that Frederick Grossman prepared a will from the memoranda and sent it over the next morning for execution would seem to indicate that no will was intended. But however that may be, the proof of the alleged nuncupative will did not conform to the requirements of the statute, and the circuit court properly instructed the jury to find that the alleged will was not the nuncupative will of Louis Grossman.

It is said, however, that the circuit court decided against the validity of the will, not on the ground above suggested, but upon the ground the testator attempted to devise' real estate, and as the will was invalid as to real estate it must be declared invalid as an entirety.

What ground the circuit court may have predicated its decision upon is immaterial. The only question here is whether the judgment of the circuit court was correct or incorrect, regardless of the reasons that may have been given for that judgment.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*