MATHIAS RAUEN, Administrator of the estate of M. RAUEN, Deceased, Appellee, v. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, Appellant.

| 129 | 725 |
|-----|-----|
| 138 | 280 |

| 129 | 725 |
|-----|-----|
| f139 | 375 |

| 129 | 725 |
|-----|-----|
| f144 | 231 |

**Insurance:** ACTION ON LIFE POLICY: DEFENCES: FRAUD: STATUTES.
1 Where an insurance company failed to attach the application for the insurance to the policy, which was issued under a law providing that the same should be attached to each policy

containing any reference to the application, "whether as a part of the policy or as having any bearing thereon," it cannot, in defense to a suit thereon, rely on any alleged warranty and false representation in the application; the effect of the statute being to exclude from the contract any reference to an application not attached to the policy, and the medical examiner's report is a part of the application to which the rule applies.

**Waiver of Fraud.** By failing to attach a copy of the application for insurance to the policy as required by statute, the company waived its right to rely on any alleged warranty or false statements contained therein.

**Foreign statute:** PLEADING. An answer in an action on an insurance policy alleging that the same was issued and delivered in a certain state, and also pleading the statute of the state, raises the question of the effect of the statute upon the contract, which the court may inquire into and determine.

**Release:** FRAUD: MISTAKE: REPUDIATION. A written release of a valuable right may be repudiated by a showing of fraud or mistake, so that where an insurance company procured from a special administratrix a release from liability on its policy, for a nominal consideration, based on the representation that the company was not in fact liable, it amounted to a fraud authorizing a repudiation of the release and the same was not a defense to a suit for the balance.

**Same:** WANT OF CONSIDERATION. Where an insurance company for a nominal sum procured a release from a much greater liability, settled by the undisputed terms of its policy and with knowledge of its liability for the full amount, the release of the unpaid portion of the demand was without consideration.

**Compromise settlement:** RELEASE: FRAUD: FACT QUESTIONS. Both the question as to whether the release, for a nominal consideration, of a liquidated demand was a compromise settlement and therefore valid, and whether the release was obtained by fraud, are questions of fact, and the findings in a law action tried to the court have the force of the verdict of a jury.

**Special administration:** COMPROMISE AND SETTLEMENT OF CLAIMS. A special administratrix has no power to compromise and settle a valid claim due from an insurance company to the executors of the estate, especially where it is not shown that she was the sole beneficiary of the policy; and her act in so doing will not bar the executors from collecting the balance due.

*Appeal from Mitchell District Court.*— HON. CLIFFORD P.
SMITH, Judge.

THURSDAY, FEBRUARY 15, 1906.

THE opinion states the case.— *Affirmed.*

*G. E. Marsh,* for appellant.

*Eaton & Salisbury,* for appellee.

WEAVER, J.— On May 7, 1902, one Matthias Rauen, a
resident of Mitchell county, Iowa, died testate.   At the date
of his death said Rauen held a policy of insurance in the
defendant company in the sum of $1,000, payable to his
executor.   By the terms of his will the testator devised to
his wife a life tenancy in all his real estate, and, subject to
the payment of his debts therefrom, gave her absolutely all
his personal property.   Matthias Rauen, son of the testator,
was named as the executor of the instrument.   Soon after the
death of the testator, his widow, Mary Rauen, was appointed
temporary administratrix to collect and preserve the property
of the estate pending the probate of the will, and acted in
that capacity until October following, when the will was
probated, and the executor named therein took charge of
the estate.   Some time after the appointment of the adminis-
tratrix she notified the defendant company of her husband's
death and furnished the required proofs.   Thereafter she
was visited by an agent of the company, and some correspond-
ence ensued, culminating in a refusal to pay the claim on
the ground that the company was relieved from all lia-
bility on the policy because, in his application therefor,
the deceased had made false representations and warran-
ties as to his medical history and condition of health.
This refusal was accompanied by an offer to return to Mrs.
Rauen the amount of the premium paid on the policy,
$47.99, upon her execution of a receipt tendered by defend-

ant for her signature. Acting, so far as it appears, without legal advice, Mrs. Rauen executed and returned the receipt to the defendant, and received and cashed its check for the amount above mentioned. The check was made payable to "Mary Rauen, Special Administratrix," and is expressed as being "in full for all claims under policy No. 331,808." The receipt was indorsed upon or attached to the policy, and is in the following form: "Newark, N. J., July 23, 1902. Received from the Prudential Insurance Company of America Forty-seven and ninety-nine one hundredths dollars ($47.99), in full for all claims under the within policy terminated by death. Maria Rauen, Special Administratrix." This transaction was never reported to the court, nor in any manner authorized or approved by it.

After the probate of the will and the appointment of plaintiff as executor, this action was begun to recover the amount of the policy. To this the defendant appeared and answered, admitting the issuance of the policy and payment of the premium thereon, and alleging in several counts, by way of defense, that the policy in suit was issued to the deceased upon his written application and medical examination, in which he made material representations as to his physical condition and health, which representations were expressly warranted to be true and made part of the contract between the parties, and that the policy was issued in reliance thereon; that said representations and warranties were not true; that the deceased was then suffering with the disease from which he afterward died; and that by reason of said fraud and the failure of said warranties the plaintiff has no right of action on the policy. The answer concedes that no copy of the application or medical examination was ever attached to the policy as required by the insurance statutes of Iowa, but says that the policy was issued and delivered in the State of Minnesota, and it is to be construed and enforced as a Minnesota contract. It also alleges that the only statute in the latter State in any manner corresponding with the Iowa statute

upon this subject is section 71, chapter 175, page 430, of the General Laws of Minnesota for 1895, which provides that " every policy which contains a reference to the application of the insured either as a part of the policy or as having any bearing thereon, must have attached thereto a correct copy of the application."

By way of further and distinct answer the defendant pleads the transaction had with the widow, by which she surrendered and receipted the policy, as a complete and valid settlement of the claim sued upon.    To that part of the answer which pleads the alleged fraud and misrepresentation of the insured in applying for the policy, the plaintiff demurred, because no copy of the application was attached to said policy.    To the count pleading the alleged settlement the plaintiff replied, alleging want of power or authority in the special administratrix to bind the estate of her husband by such an agreement, and, further, that said agreement was without consideration and the same was procured by fraud and mistake.    The court sustained the demurrer, and upon trial of the issue of fact found the plaintiff entitled to recover.    The defendant appeals.

I.    The provision of our own Code (section 1819) is that wherever the policy of life insurance makes the application a part of the contract, or in any manner refers to such application, a copy thereof must be attached thereto or indorsed upon the policy, an omission so to do, while not invalidating the policy, shall serve to preclude the insurance company from pleading, alleging, or proving such application or representations or the falsity thereof.

1. INSURANCE: action on life policy: defense: fraud: statutes.

If, therefore, in an action brought in our courts, the Iowa statute is to govern as to such matters of pleading and proof, the demurrer was properly sustained.    So, also, if the Iowa statute be held not applicable, and the rights of the parties in this respect are to be measured by the Minnesota statute, and this latter statute is to be construed as having

like legal effect with our own, the ruling was correct. Some members of the court would affirm the ruling sustaining the demurrer, on the theory that our statute pertains solely to matters of remedy and procedure, and not to the validity or substance of the contract, and therefore applies to all actions upon life insurance policies brought in this jurisdiction. *Nelson v. Insurance Co.*, 110 Iowa, 600; *Jones v. Insurance Co.*, 110 Iowa, 75; *Burk v. Putnam*, 113 Iowa, 234; *Allerton v. Monona Co.*, 111 Iowa, 560; *Wormley v. Hamburg*, 40 Iowa, 22; *McLane v. Brown*, 70 Iowa, 752; *Wood v. Brolliar*, 40 Iowa, 594; *Parsons v. Carey*, 28 Iowa, 436; *Railroad Co. v. Dey*, 82 Iowa, 312; *Williams v. Haines*, 27 Iowa, 254; *Kossuth Co. v. Wallace*, 60 Iowa, 508; *Ballard v. Ridgley, Morris* 27; *Inghram v. Dooley, Morris*, 29; *Stanhilber v. Insurance Co.*, 76 Wis. 285 (45 N. W. 221); *Hebb v. Insurance Co.*, 138 Pa. 174 (20 Atl. 837); *Insurance Co. v. Owen*, 10 Colo. App. 131 (50 Pac. 210); *Railroad Co. v. McCann*, 54 Ohio St. 10 (42 N. E. 768, 31 L. R. A. 651, 56 Am. St. Rep. 695); *Emery v. Burbank*, 163 Mass. 326 (39 N. E. 1026, 28 L. R. A. 57, 47 Am. St. Rep. 456); *Bair v. Railroad*, 3 H. L. Cases, 1; *Downer v. Chesebrough*, 36 Conn. 39 (4 Am. Rep. 29); *Association v. Musser*, 120 Pa. 384 (14 Atl. 155); *Norristown Title, Trust & Safe Deposit Co. v. Insurance Co.*, 132 Pa. 385 (19 Atl. 270); *Hunziker v. Lodge*, 25 Ky. Law 1510 (78 S. W. 201); *Fant v. Miller*, 17 Grat. (Va.) 47; *Corbin v. Bank*, 87 Va. 661 (13 S. E. 98, 24 Am. St. Rep. 673); *Insurance Co. v. Pollard*, 94 Va. 146 (26 S. E. 421, 36 L. R. A. 271, 64 Am. St. Rep. 715); *Hunt v. Jones*, 12 R. I. 265 (34 Am. Rep. 635); *Railroad v. Barron*, 83 Ill. 365; *Dorr Cattle Co. v. Bank*, 127 Iowa, 153; *Heaton v. Eldredge*, 56 Ohio St. 87 (46 N. E. 638, 36 L. R. A. 817, 60 Am. St. Rep. 737); *Lenroux v. Brown*, 2 C. B. 801; *Southwick v. Southwick*, 49 N. Y. 510; *Howard v. Moot*, 64 N. Y. 262; *Rich v. Flanders*, 39 N. H. 304; *Kingley v. Cousins*, 47 Me. 95; *Edwards v. Dixon*, 53 Ga. 334; *O. Waterworks v. Oshkosh*, 109 Wis. 208 (85 N.

W. 376, 95 Am. St. Rep. 870) ; *Von Baumbach v. Bade,* 9
Wis. 559 ('76 Am. Dec. 283) ; *Curtis v. Whitney,* 80 U. S.
68 (20 L. Ed. 513) ; *Fong Yue Ting v. U. S.,* 149 U. S. 698
(13 Sup Ct. 1016, 37 L. Ed. 905) ; *Mack v. De Graff,* 57
Ohio St. 482 (49 N. E. 697, 63 Am. St. Rep. 729) ; *Helton
v. Railroad,* 97 Ala. 275 (12 South. 285) ; Cooley's Constitu-
tional Limitations (5th Ed.) pp. 329, 349, 443 ; Story's Con-
flict of Laws, section 342 ; Sutherland's Statutory Construc-
tion, section 478.

We find it unnecessary, however, to now decide the ques-
tion here suggested, as in our judgment the ruling of the trial
court upon the demurrer may well be upheld, even on the
appellant's theory that statutes of the nature of Code, section
1819, go to the substance and legal effect of the contract of
insurance, rather than the remedy, and that the policy sued
upon must be treated as a Minnesota contract.   The statute
of Minnesota pleaded and relied upon by the appellant, and
above quoted requires that each policy of insurance which
contains a reference to the application of the insured,
" whether as a part of the policy or as having any bearing
thereon," must have attached thereto a correct copy of the
application.   In our judgment the effect of this provision
is to exclude or eliminate from the contract all reference
to an application a copy of which is not attached to the policy,
and to render ineffective all defenses based upon anything
contained in such application.   To hold otherwise is to rob
the statute of all effective force and make its enactment mean-
ingless.   We are therefore disposed to hold that, if the appli-
cation be not attached in obedience to the statute, the policy
should be treated, construed, and enforced as if no written
application had been made.   Applying the Pennsylvania
statute requiring a copy of the application to be attached to
the policy, the court of that State adopted the view here ex-
pressed, and has said that where this requirement is not ob-
served " the case is to be considered as if no such paper
existed."   *Imperial Ins. Co. v. Dunham,* 117 Pa. 460 (12

Atl. 673, 2 Am. St. Rep. 686). The statute is clearly intended to protect the policy holder by requiring the company to place in his hands written evidence of the entire contract between them, and a company issuing a policy to which no copy of application is attached must be held to have thereby expressed its purpose to waive or relinquish its right to have said application considered as any part of the contract. The language of the statute is broad and imperative, and requires the attaching of the copy whenever the application is referred to either " as a part of the policy or as having any bearing thereon." The defense to which the demurrer is sustained is bottomed upon the proposition that the application was in fact referred to by the policy and made a part of the contract, and this is the very condition to which the statute is by its express terms intended to apply. If we say that the company may disregard this statute and issue its policy without attaching a copy of the application, and still have the right to assert and rely upon such application as a part of the contract, the legislative enactment is reduced to a mere idle form of words, having not the least effect upon the rights of parties as they existed before it was passed. It is the duty of the court, whenever it can be consistently done, to so construe a statute as to give it force and effect, and in such manner as to best accomplish the evident intent of the Legislature. *Haskel v. Burlington,* 30 Iowa, 232; *Stephens v. Railroad Co.,* 36 Iowa, 327; *Wood v. Farmer,* 69 Iowa, 533; *Dutton v. Insurance Co.,* 17 Vt. 369.

This we think is best done by treating the Minnesota statute as in legal effect the equivalent of our own. Our attention is not directed by counsel to any decision of the courts of that State affecting the question, and we have found none. Quite in accord with the rule here applied is the case of *Sands v. Insurance Co.,* 26 Grant's Ch. (Up. Can.) 113. The statute of Ontario provides that, if the insurer prescribes contract conditions which differ or vary from those enumerated in the act, they shall be added to

the policy in conspicuous type and ink of a different color. A policy in suit had such additional matter printed in the same type as the body of the instrument and ink of a slightly different shade; but this was held not to be a compliance with the statute, and a violation of such conditions by the insured could not be set up as a defense.   Such conditions were no part of the contract.   See, also, *Frey v. Insurance Co.,* 43 Up. Can. Q. B. 102; *Parsons v. Insurance Co.,* 43 Up. Can. Q. B. 261; *McIntyre v. Insurance Co.,* 44 Up. Can. Q. B. 501; *Ulrich v. Insurance Co.,* 42 Up. Can. 141.

It is within the unquestioned province of the State to provide the conditions upon which insurance corporations may do business, and to provide the form and scope of the contracts which they are authorized to make.   It is clearly not in excess of this authority for the Legislature to enact that the entire contract between the parties, and all conditions and stipulations by which the policy may be avoided, shall be embodied in or attached to the policy delivered to the insured; and this, we think, is the manifest meaning of the enactment which requires that every policy which purports to treat the application as a part of the contract or as having any bearing thereon must have a copy thereto attached.   It follows from the views we have here expressed that there was no error in sustaining the demurrer to that division of the answer pleading the alleged warranty and false representations in the application for the policy in suit.

The same objection is also fatal to the plea of false and fraudulent representations made to the applicants medical examiner, and the demurrer thereto was also properly sustained.   The medical examination was part and parcel of the application (Cooley's Briefs on the Law of Insurance, vol. 1, p. 683 [d], and no copy thereof was attached to the policy, and for the reasons already stated defendant was not entitled to avail itself of any defense on account of matters contained therein.   This conclusion does not necessarily involve any reference to section 1812 of our Code.   That section is to

the effect that, where the company's medical examiner approves an applicant as a fit subject for insurance, the company cannot plead or prove that the insured was not in sound health at the date of the policy issued upon such examination, unless it be shown that such certificate of health was obtained by fraud.

It may be admitted, for the purposes of this case, that the fraud pleaded was sufficient to avoid the policy if the appellant had put itself in position to make use of the defense; but, failing to attach a copy of the application to the policy, it waived its right to take issue upon the application or any part of it. Referring to the act from which the above quotation of the Minnesota statute is pleaded by the defendant, we find that it is prefaced by the declaration (section 3) that " it shall be unlawful for any company to make any contract of insurance . . . in this State . . . unless and except as authorized by the provisions of this act." The same general purpose to require the entire contract, and the representations, if any, on which it is made, to be embraced in or attached to the policy given to the insured, is found expressed in the statutes of many States. In some, as in our own, it is accompanied by the express provision that if not attached, the application or other representation shall not be pleaded or proved, while in others the general requirement for that embodiment of the entire contract in the instrument delivered to the insured is not so accompanied. For example, see Gen. St. Kan. 1901, section 3560, and Cal. Civ. Code, section 2605. The California statute here referred to provides simply that " every express warranty made at or before the execution of the policy must be contained in the policy itself or in another instrument signed by the insured and referred to in the policy as making part of it." In Kentucky the statute is that no insurance company " shall make any contract of insurance or agreement as to such contract other than is plainly expressed in the policy issued thereon." Ky. St. 1903, section 656.

2. WAIVER OF FRAUD.

In no State where any such statute is found, whether accompanied or unaccompanied by an express provision excluding proof of false representation of warranty not contained in or attached to the policy, have we been able to find a decision or suggestion by any court that a company failing to attach or embody the application in its policy when required by statute may make such omitted matter a basis of defense to an action on the contract. On the other hand, in every State where occasion has arisen to consider it, the holding has been to the contrary. *Insurance Co. v. Bank,* 48 Kan. Sup. 393 (29 Pac. 576); *Insurance Co. v. Bank,* 48 Kan. Sup. 397 (29 Pac. 578); *National Life Ass'n. v. Berkley,* 97 Va. 571 (34 S. E. 469).

As we have already suggested, it is within the power of the Legislature not only to impose conditions upon the right of insurance corporations to do business in the State, but to regulate the form and substance of all insurance contracts, and prescribe what conditions may or may not be imposed upon the insured. When, therefore, it is enacted that all representations and warranties upon which the company proposes to rely or insist shall be attached to or embodied in the policy, the State is not exceeding its recognized authority, and the company failing to comply with the provision must be conclusively held to have elected to rely upon the contract as contained in such policy without reference to any representation or warranty not contained in that instrument. The denial of the right to plead or prove such extrinsic matter is not in any proper sense a " penalty " for failing to comply with the statute, for the company has a perfect right to waive or forego any advantage it could derive from an embodiment of the application in the policy. It issues its policy with the statute in view, and, failing to do that which by the terms of the statute is necessary to allow the application to have " any bearing " on the rights of the parties, the contract stands as if the omitted writings never existed.

It is suggested in the argument for appellant that the

effect of the Minnesota statute is a question not raised by the
record made in the court below. The objection is not well
3. FOREIGN            taken. The answer expressly pleads the laws
   STATUTE:
   pleading.          and the statutes of Minnesota, which it claims
entered into the contract of insurance and vested the in-
surer with the right to rely upon the defense of fraud, mis-
representation, and breach of warranty. This plea makes
it both proper and necessary for the court to inquire and
determine whether the matters alleged have the effect claimed
for them. And even if the ruling upon the demurrer was in-
fluenced alone by the view of the trial court as to the effect
of the Iowa statute, still, if an application of the Minnesota
statute pleaded by the appellant would necessarily lead to the
same result, the ruling would not be disturbed. *Jamison v.
Perry,* 38 Iowa, 14; *Grossman's Estate,* 175 Ill. 425 (51 N.
E. 750, 67 Am. St. Rep. 219).

        II. In view of the conclusion we have reached concern-
ing the nature and extent of the authority of the special ad-
ministratrix as hereinafter more fully explained, the ques-
tion whether she fully and intelligently comprehended the
meaning and legal effect of the papers signed by her is not of
controlling importance; and if there was error, as claimed by
appellant, in the ruling of the trial court by which the said
administratrix, testifying as a witness for appellee was per-
mitted to state that she understood and supposed that the al-
leged release given by her to appellant was a receipt for a
partial payment only and not a complete relinquishment of
all claims under the policy, it was error without prejudice.
We shall therefore not attempt at this time to pass upon the
competency or admissibility of such testimony in cases where
that question becomes material. But see *Hewitt v. Clark,*
91 Ill. 605; *Railroad Co. v. Uhter,* 212 Ill. 174 (72 N. E.
195); *Pioneer Co. v. Romanowicz,* 186 Ill. 9 (57 N. E.
865); *National Co. v. Carlson,* 155 Ill. 210 (40 N. E.
492); *O'Donnell v. Clinton,* 145 Mass. 461 (14 N. E. 747);
*Smith v. Occidental Co.,* 99 Cal. 462 (34 Pac. 84); *Rosen-*

*berg v. Doe,* 148 Mass. 560 (20 N. E. 176)`;` *Railroad Co. v. Lewis,* 109 Ill. 120; *Butler v. Regents,* 32 Wis. 132; *Schultz v. Railroad Co.,* 44 Wis. 638; *Albrecht v. Railroad Co.,* 94 Wis. 397 (69 N. W. 63.)

III.   It is also argued that, under all the evidence in the case, the court should have held, as a matter of law, that plaintiff was bound by the release given by the special ad-

*4. RELEASE: fraud: mistake; repudiation.*

ministratrix, and could not recover upon the policy.   Assuming, for the present, that Mary Rauen, as special administratrix, had the legal right and authority to receive and receipt for the moneys, if any, due to the estate of her husband on the policy in suit, let us inquire as to the effect of the alleged release. That one who has made a written surrender of a valuable right, or release of a subsisting cause of action, may repudiate the same upon sufficient showing of fraud or mistake, even where the demand thus released is disputed and unliquidated, is too well established to admit of controversy.   *Barton v. Fuson,* 81 Iowa, 575; *Sullivan v. Collins,* 18 Iowa, 228; *Levi v. Karrick,* 13 Iowa, 334; *Packer v. Packer,* 24 Iowa, 20; *Railroad Co. v. Jones,* 73 Miss, 110 (19 South, 105); *Toland v. Corey,* 6 Utah, 392 (24 Pac. 190)`;` *Kirchner v. Sewing Mach. Co.,* 135 N. Y. 189 (31 N. E. 1104); *In re Fisher's Estate,* 189 Pa. 179 (42 Atl. 8); *Jordan v. Stevens,* 51 Me. 78 (81 Am. Dec. 556); *Titus v. Insurance Co.,* 97 Ky. 567 (31 S. W. 127, 28 L. R. A. 478, 53 Am. St. Rep. 426); *Byers v. Railroad,* 94 Tenn. 345 (29 S. W. 128); *Henry v. Imperial Council,* 52 N. J. Eq. 770 (29 Atl. 508); *Warder v. Tucker,* 7 Mass. 449 (5 Am. Dec. 62); *Anderson v. Bacon,* 1 A. K. Marsh (Ky.) 48; *Haven v. Foster,* 9 Pick. (Mass.) 112 (19 Am. Dec. 353); *Railroad Co. v. Goodholm,* 61 Kan. 758 (60 Pac. 1066); *Railroad Co. v. Brown* (Tex. Civ. App.), 69 S. W. 651; *Redfield v. Insurance Co.,* 56 N. Y. 354 (15 Am. Rep. 424). The mistake which will avoid a release is not necessarily a mistake of fact, but there are frequent instances in which

a mistake of law or the legal effect of the written instrument has been held sufficient ground for its repudiation. See, in addition to cases above cited, Pomeroy's Eq. Jur. section 849; *Renard v. Clink,* 91 Mich. 1 (51 N. W. 692, 30 Am. St. Rep. 458); *Chapman v. Allen,* 56 Conn. 152 (14 Atl. 780); *State v. Paup,* 13 Ark. 129 (56 Am. Dec. 303); *McCarthy v. Decaix,* 2 Russ & M. 614; *Cockerell v. Cholmeley,* 1 Y. & C. 418; *Northrop's Ex'rs. v. Graves,* 19 Conn. 548 (50 Am. Dec. 264); *Lammot's Heirs v. Bowley's Heirs,* 6 Har. & J. (Md.) 500.

If, then, the defendant represented to Mrs. Rauen that the policy was void or voidable because of false statements or warranties in the application, when in truth, as we here held, no such defense to her claim existed, and that the plaintiff, relying upon such representations, released the right of action on the policy for a merely nominal consideration (and this is the substance of defendant's own showing), we have a case in which the findings of fraud or mistake cannot be set aside as without support in the evidence. In *Berry v. Insurance Co.,* 132 N. Y. 49 (30 N. E. 254, 28 Am. St. Rep. 548) the plaintiff was the holder of a policy of fire insurance upon which a loss had occurred. The adjuster for the company represented to the insured that, by reason of an alleged violation of the conditions of the policy (objections which had, in fact, been waived), the company was not liable thereon, and thus induced the insured to accept materially less than he was entitled to recover. There was no showing that the adjuster acted in bad faith, but the court, after recognizing the general rule that a mistake of law will not avoid a contract says:

But there was here more than a mistake. There was a surrender of legal rights intentionally induced and procured by a false representation as to the law governing the case. The defendant must be presumed to have known that it was liable for the whole loss, and by falsely representing that under the law applicable to the case the policy was void it

induced plaintiff to rely upon the superior knowledge that it possessed upon the subject and to surrender to it his claim. This clearly constituted fraud, and there would be manifest injustice in upholding a settlement under such circumstances.

A similar proposition is affirmed in *Tabor v. Insurance Co.*, 44 Mich. 324 (6 N. W. 830), and in *Insurance Co. v. Bowes*, 42 Mich. 19 (51 N. W. 962). In *Henry v. Imperial Council* 52 N. J. Ch. 770 (29 Atl. 508), the plaintiff's husband died holding benefit certificates issued by the defendant to the amount of $3,000. Upon the claim by the defendant that the deceased was not in good standing in the council at the time of his death, plaintiff was induced to accept $500 and execute a release of all her claims upon the certificates. Upon a showing that the claim made by the defendant was not true to fact, the settlement was held fraudulent and void, although plaintiff, before accepting the compromise, had the assistance of counsel, To the same effect, see, also, *Tyler v. O. F. Rel. Ass'n.*, 145 Mass. 134 (13 N. E. 360); *Sanford v. Insurance Co.*, 11 Wash. 653 (40 Pac. 609); Kerr on Fraud, 399, 400; Bispham's Equity, section 188; McLean v. Equitable, 100 Ind. 127 (50 Am. Rep. 779); *Silk v. Mutual, etc.*, 159 Pa. 625 (28 Atl. 445).

The Kentucky court has said that when it is " perfectly evident that the only consideration of a contract is a mistake as to the legal rights of the parties, and when there has been no fair compromise of *bona fide* and doubtful claims, we do not doubt that the agreement may be avoided on the ground of a clear mistake of law and a total want, therefore, of consideration or mutuality." *Underwood v. Brockman*, 4 Dana, 309 (29 Am. Dec. 407); *Belt v. Insurance Co.*, 148 N. Y. 624 (43 N. E. 64); *Rued v. Cooper*, 119 Cal. 463 (51 Pac. 704).

It is inconceivable that in the case at bar the special administratrix could have surrendered the interests of the estate in a policy of $1,000 against which no valid defense has been shown, except under a clear misapprehension of its

validity, or of the meaning of and effect of the paper signed by her.  A grossly inadequate consideration for the release of valuable rights has been held to be in itself an evidence of fraud.   *Toomey v. Whitney,* (Sup.) 88 N. Y. Supp. 216; *Railroad Co. v. Shuford,* 36 Tex. Civ. App. 251 (81 S. W. 1189); *Russell v. Railroad Co.,* 109 Tenn. 43 (70 S. W. 1); *Staples v. Wellington,* 62 Me. 9.   A specific intent to defraud need not in all cases be established in order to avoid a release, where the person executing it has in fact been misled as to its meaning and effect.   *Conner v. Dundee* (N. J.), 17 Atl. 975; *O'Donnell v. Clinton,* 145 Mass. 461 (14 N. E. 747); *Warder v. Tucker,* 7 Mass. 449 (5 Am. Dec. 62).

It is further to be remembered that if, as contended by the appellant, the rights of the parties in respect to matters involved in this controversy are governed by the laws of Minnesota, then a misrepresentation to or a mistake by the special administratrix in respect to those rights is to be considered as a misrepresentation or mistake of fact, and not of law.   The rule by which a party is presumed to know the law has no reference to the law of another state or country.   *Schneider v. Schneider,* 125 Iowa, 15; *King v. Doolittle,* 1 Head. (Tenn.) 77; *Patterson v. Bloomer,* 35 Conn. 57 (95 Am. Dec. 218); *Morgan v. Bell,* 3 Wash. St. 554 (28 Pac. 925, 16 L. R. A. 614); *Norton v. Marden,* 15 Me. 45 (32 Am. Dec. 132).

But there is another rule of law which is pertinent to this issue.   The appellee avers and insists that the release pleaded by the appellant, even if made by a person of competent authority, is without consideration.   The

5. SAME: want of consideration.

policy in suit represents a liquidated demand in appellee's favor.   If, upon the death of the insured, his representatives became entitled to recover anything upon this demand, it was $1,000; neither more nor less.   It is an ancient doctrine of the common law, often approved and applied by this court, that an agreement to release or discharge a liquidated enforceable debt on pay-

ment of less than the amount due is not supported by a consideration and will not defeat an action to recover the unpaid remainder. *Eldred v. Petterson,* 80 Iowa, 264; *Bender v. Been,* 78 Iowa, 283; *Works v. Hershey,* 35 Iowa, 340; *Rea v. Owens,* 37 Iowa, 262; *Myers v. Byington,* 34 Iowa, 205.

An exception is found to this rule when the creditor's claim is of a doubtful character, or is the subject of a *bona fide* dispute or controversy, and the part payment in discharge of the whole is made pursuant to an agreement of settlement or compromise, or where the agreement is made and carried out pending actual litigation. But this exception is not available to the debtor, where no defense to the claim exists, and the circumstances are such that the debtor securing the compromise must be presumed to know that he is legally liable for the full face of the demand. In other words, if by alleging and claiming a defense which does not exist, or by representations of fact which are not true, the debtor induces his creditor to accept less than is justly due him in satisfaction of the entire debt, the release so secured is of no avail to defend an action by the creditor. This well-established rule has often been applied to cases where an insurance company, by claiming a defense which does not in fact exist, obtains a settlement of the policy holder's claim and surrender of the policy for less than is due thereon. Quite in point is the case of *Insurance Co. v. Wickham,* 141 U. S. 564 (12 Sup. Ct. 84, 35 L. Ed. 860). In that case the policy holder claimed a certain sum for injury to an insured vessel which had been partially burned and sunk and an additional sum for expenses incurred in raising the hull. Upon payment of the first item, he made and delivered to the company a release in full, declaring that " in consideration of said payment said policy is hereby canceled and surrendered to said company, and all further claims by virtue of said policy forever waived." Five other policies in as many different companies covering the same loss

were on the same day surrendered to the insurers, with releases similar to the one above quoted from.    Later the plaintiff brought an action at law upon the policies to recover the remainder of his claim, and from judgment in his favor an appeal was taken to the Supreme Court of the United States, by which the finding was affirmed under the rule to which we have adverted, that payment of a part of a just debt affords no consideration for the release of the remainder. The court, by Mr. Justice Brown, says that:

If the plaintiffs were induced to settle their claims for one half the amount that was due them, and there was no consideration for the relinquishment of the other half, this suit will lie for the recovery of the amount.    The rule is well established that where the facts show clearly a certain sum to be due from one person to another, a release of the entire sum upon payment of part is without consideration, and the creditor may still sue and recover the residue.    If there be a bona fide dispute as to the amount due, such dispute may be the subject of a compromise, and payment of a certain sum is a satisfaction of the entire claim; but where the larger sum is admitted to be due, or the circumstances of the case show that there was no good reason to doubt that it was due, the release of the whole upon payment of part will not be considered a compromise, but will be treated as without consideration and void.

Applying the same principle, see *Insurance Co. v. Villeneuve,* 25 Tex. Civ. App., 360 (60 S. W. 1014); *Anthony v. Boyd,* 15 R. I. 495 (8 Atl. 701); *Smith v. Farra,* 21 Or. 395 (28 Pac. 241); *Tucker v. Ronk,* 43 Iowa, 80; *Sullivan v. Collins,* 18 Iowa, 228; *Peterson v. Breitag,* 88 Iowa, 418; *Headly v. Hackley,* 50 Mich. 43 (14 N. W. 693); *Hayes v. Insurance Co.,* 125 Ill. 626 (18 N. E. 322, 1 L. R. A. 303); *Simons v. Council,* 82 App. Div. 617, 81 N. Y. Supp. 1014; *Komp v. Raymond,* 175 N. Y. 102 (67 N. E. 113).

It is clear, therefore, that, the appellee's claims upon the policy being a liquidated demand, the release thereof

by the special administratrix for a merely nominal sum
can be sustained only on the theory that it was
a compromise of a doubtful claim or of a *bona
fide* dispute as to the rights of the parties.

6. COMPROMISE
SETTLEMENT:
release; fraud;
fact questions.

From what we have said in the preceding paragraphs of
this opinion, it cannot be held as a matter of law that ap-
pellee's claim was of a doubtful character; and whether
the refusal to pay and the assertion of a defense by which
the release was induced were *bona fide,* or were advanced for
the mere purpose of securing an advantageous settlement,
was a question of fact for the trial court or jury to de-
termine.

To support a compromise there should be a doubtful
bona fide claim, about which the parties stand on equal foot-
ing as to knowledge or ignorance of facts, and in settling it
there should be no imposition or deceit.   That is no com-
promise where one knows that he has no claim, but deceives
the other into believing he has one.   It is mutual concession
or the common risk in the event, which supports a compro-
mise.   If one has no claim, and he knows it, he is not con-
ceding in a compromise.   He is cheating.   He has nothing
to concede, and his only chance in the doubtful issue is that
his fraud may possibly fail.   Anthony v. Boyd, *supra; Ness
v. Minnesota Co.,* 87 Minn. 413 (92 N. W. 333); *DeMars
v. Musser,* 37 Minn. 418 (35 N. W. 1).

Moreover, it must not be overlooked that this case was
tried below as an action at law, and the finding of the court
upon the facts comes to us with the force and effect of a ver-
dict of a jury.   Whether a release of debt was fairly ob-
tained is a question of fact which may be raised in any
action where such release is made the basis of defense.
*O'Donnell v. Clinton,* 145 Mass. 461 (14 N. E. 747); *Rail-
road Co. v. Uhter,* 212 Ill. 174 (72 N. E. 195); *Pioneer
Co. v. Romanowicz,* 186 Ill. 9 (57 N. E. 864); *National S.
Co. v. Carlson,* 155 Ill. 210 (40 N. E. 492); *Railroad Co. v.
Fowler,* 201 Ill. 152 (66 N. E. 394, 94 Am. St. Rep. 158).

IV.   But there is another phase of this case which must be considered.    The settlement or compromise relied upon by the appellant was had, as we have seen, with the special administratrix of the estate, and before the will was admitted to probate.    It appears that in this transaction she acted without any special order or authority granted by the court, and that her acts therein were never reported to or approved by the court.    The appellee, among other objections to said settlement makes the point that a special administratrix has not, by virtue of an appointment as such, any power to bind the estate by a compromise and release of a valid claim.    Our statute provides that when " from any cause general administration or probate of a will cannot be immediately granted, one or more special administrators may be appointed to collect and preserve the property of the deceased." Code, section 3299.

7. SPECIAL AD-
MINISTRATION:
compromise
and settlement
of claims.

It is further provided that they shall make and file an inventory, and shall preserve the property from injury, but shall take no steps in relation to allowance of claims against the estate.    Upon the granting of full administration the powers of the special administrator cease, and all the business is to be transferred to the general executor or administrator.    Code, section 3300.

It will be observed, from the language of the statute referred to, that the powers of a special administrator are of a special and limited character.    Recognizing this fact, we have held that his appointment is not sufficient to set in motion the statute of limitations against the claims of creditors. (*Pickering v. Weiting,* 47 Iowa, 242) ; that the court has no authority to order the sale of real estate on his petition, and that sale made under an order so procured is absolutely void (*Long v. Burnett,* 13 Iowa, 28) ; and that he has no power to submit a claim against the estate to arbitration (*Sullivan v. Nicoulin,* 113 Iowa, 76).    Even as to general administrators the power to compromise with a debtor of the

estate is expressly made subject to the approval of the court. Code, section 3318.

In the Sullivan case we said of the powers of a special administrator that " he is simply to collect and preserve the property of the deceased, and for this purpose may do all needful acts under the direction of the court." In that case the special administrator submitted to arbitration a claim in favor of the estate against which the debtor had set up a counterclaim. This, we said, was without authority of law, and constituted no defense to an action after brought upon the claim by the general administrator against the debtor. If that decision announces a correct rule, there seems to be no way to escape the conclusion that a compromise made by a special administratrix pending probate of the will, without the authority of approval of the court, releasing a valuable right of the estate for a mere nominal consideration, is not a sufficient answer to an action brought by the executor after the will has been duly probated. In Long v. Burnett, *supra,* the court emphasizes the limited power of the special administrator, saying: " His functions are limited to a few prescribed duties in relation to the preservation of the personal assets, and these cease as soon as a regular administrator is appointed. He cannot be sued. The statute of limitation does not run against creditors during the period of his agency. He is simply an agent and not an administrator. He has no power to settle the estate." Bearing on the same point, see *Larson v. Johnson,* 72 Minn. 441 (75 N. W. 699); *McAlpine v. Kratka,* 92 Minn. 411 (100 N. W. 233).

The statute itself is not of doubtful construction, and, when read in the light of our cases above cited, leaves no room for any other result than we have already suggested, that the special administratrix of the state of Matthias Rauen was without power as such to enter into any compromise of the claim upon the policy.

It is very earnestly urged by the appellant that even if this be technically true, Mary Rauen was in fact the sole

beneficiary of the policy, and for this reason, if no other, the settlement with her may and should be upheld.

Whether the debtor of an estate may secure a release from the beneficiary under the will of the deceased and thereby bar an action by the administrator we need not now determine, for if such recourse be available under any circumstances we think this case is not within that rule. It is not shown by the present record that Mary Rauen is the sole beneficiary under the policy. The indemnity there provided is expressly made payable to the executors of the insured. By Code, section 3313, such moneys are to be " disposed of like other property left by the deceased," and by section 1805 they " inure to the separate benefit of his wife and children."

It is clear, from these provisions, that the widow is not the only person interested in the collection of the policy, and therefore the executor cannot be estopped or concluded by her act in attempting to release the claim, unless we concede the appellant's theory that the effect of the will is to vest her with that right. But this we cannot concede. In the first place, it does not appear whether the widow had then or has yet exercised her election to take under the will or under the statute of descent and distribution. If she shall elect to take under the statute, her right to the proceeds of the policy will not be exclusive, while, if she takes under the will, she takes the personal property including the insurance policy or its proceeds charged with the debts of the estate. It is true the avails of life insurance are not, by law, subject to the payment of debts, but, if the insured had the right to dispose of the proceeds of the policy by his will, he had the right to charge the bequest with conditions, and this he expressly did. It follows that in no event disclosed by the record can the executor be barred by the act of the widow from his right to collect the claim upon the policy and apply the avails as provided by law or by the terms of the will.

We find no error in the record requiring a reversal, and the judgment of the district court is *affirmed.*